| | |
|---|---|
| **DISTRICT COURT, JEFFERSON COUNTY, STATE OF COLORADO** | |
| 100 Jefferson County Pkwy.<br>Golden, CO 80401 | DATE FILED: February 9, 2023 10:06 AM<br>FILING ID: 67B405CA13E5D<br>CASE NUMBER: 2023CV30175 |
| **Plaintiffs:**   **STEVEN EVERTS and DESIREE EVERTS**<br><br>v.<br><br>**Defendants:**   **JESUS PUEBLA, individually, CAMINANTES TRANSPORTATION, INC. d/b/a CAMINANTES TRUCKING, CARLOS COREAS a/k/a CARLOS ARAUJO, individually, LUCKY 22, INC., a Colorado Corporation, PARIS WEST TRUCKING, INC., a Colorado Corporation** | |
| *Attorneys for Plaintiff:*<br>Jason W. Jordan, Atty. No. 37263<br>Michael J. Rosenberg, Atty. No. 27471<br>Michael S. Douglass-Harris, Atty. No. 43916<br>**JORDAN HERINGTON & ROWLEY**<br>5445 DTC Parkway, Suite 1000<br>Greenwood Village, CO 80111<br>Phone: (303) 766-8153<br>Fax: (303) 766-5568<br>jason@jordanlaw.com<br>mike@jordanlaw.com<br>michael@jordanlaw.com<br><br>Jerry R. Bowman, Atty No. 43457<br>**BOWMAN LAW, LLC**<br>2727 Bryant St., Ste 102<br>Denver, Colorado 80211<br>Phone: (720) 863-6904<br>Fax: (720) 505-2704<br>bowman@copihelp.com | ▲ **COURT USE ONLY** ▲<br><br>**Case Number:**<br><br>**Division:** |
| **COMPLAINT AND JURY DEMAND** | |

Plaintiffs, Steven Everts and Desiree Everts ("Plaintiffs"), by and through their attorneys, **JORDAN HERINGTON & ROWLEY**, and **Bowman Law, LLC**, for their *Complaint and Jury Demand* against Defendants, Jesus Puebla ("Defendant Puebla"), Caminantes Transportation, Inc. d/b/a Caminantes Trucking ("Defendant Caminantes"), Carlos Coreas a/k/a Carlos Araujo ("Defendant Coreas"), Lucky 22, Inc. ("Defendant Lucky 22"), Paris West Trucking, Inc. ("Defendant Paris West"), states and alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1.      Plaintiffs Steven and Desiree Everts are residents of the State of Wyoming in the County of Campbell. At all times relevant hereto, Steven and Desiree Everts are the natural parents of Halie Everts and natural grandparents of Tessleigh Godines, both deceased.

2.      The persons making claims for the wrongful death of Halie Everts, pursuant to their rights under applicable law, are:

    a.      Steven Everts, father;
    b.      Desiree Everts, mother.

3.      The persons making claims for the wrongful death of Tessleigh Godines, pursuant to their rights under applicable law, are:

    a.      Steven Everts, grandfather;
    b.      Desiree Everts, grandmother.

4.      At all times relevant hereto, Halie Everts (now deceased), was a resident of the State of Wyoming in the County of Campbell.

5.      At all times relevant hereto, Tessleigh Godines (now deceased), was a resident of the State of Wyoming in the County of Campbell.

6.      At the time of her death, Halie Everts was the natural mother of Tessleigh Godines.

7.      At all times relevant hereto, Steven Everts is the father of Halie Everts and the grandfather of Tessleigh Godines.

8.      At all times relevant hereto, Desiree Everts is the mother of Halie Everts and grandmother of Tessleigh Godines.

9.      At the time of her death, Halie Everts was 20 years old.

10.     At the time of her death, Tessleigh Godines was 3 months old.

11.     Upon information and belief, at all times relevant to this action, Defendant Jesus Puebla (hereinafter "Defendant Puebla") was and is a resident of the State of Colorado in the County of Denver, currently residing in 16503 E. 49th Ave., Denver, CO 80239. At all times

relevant hereto and at the time of the incident precipitating this lawsuit, Defendant Puebla was acting in the course and scope of his employment with Defendants Caminantes and Defendant Lucky 22.

12.    Upon information and belief, at all times relevant to this action, Defendant Caminantes Transportation, Inc. d/b/a Caminantes Trucking (hereinafter "Defendant Caminantes") is a sole proprietorship incorporated and residing in California, with its principal office located at 2035 W. 15th St., Long Beach, CA 90813, United States; its registered agent is Jose Mauricio Coreas, located at 2035 W. 15th St., Long Beach, CA 90813.

13.    Upon information and belief, at all times relevant to this action, Defendant Carlos Coreas a/k/a Carlos Araujo (hereinafter "Defendant Coreas") was and is a resident of the State of Colorado in the County of Jefferson, currently residing at 806 Birch St., Unit 9, Hudson, CO 80642. At all times relevant hereto and at the time of the incident precipitating this lawsuit, Defendant Coreas is the sole owner of Defendant Lucky 22.

14.    Upon information and belief, at all times relevant to this action, Defendant Lucky 22, Inc. (hereinafter "Defendant Lucky 22") is a Colorado corporation with its principal office located at 9400 W. 67th Place, Arvada, CO 80004, United States; its registered agent is Carlos Coreas, located at 9400 W. 67th Place, Arvada, CO 80004.

15.    Upon information and belief, at all times relevant to this action, Defendant Paris West Trucking, Inc. (hereinafter "Defendant Paris West") is a sole proprietorship incorporated and residing in California, with its principal office located at 2105 W. 15th St., Long Beach, CA 90813, United States; its registered agent is Carlos Coreas, located at 9400 W. 67th Place, Arvada, CO 80004.

16.    Defendant Caminantes Trucking, Defendant Lucky 22, Inc. and Defendant Paris West Trucking, Inc. will be listed hereinafter as "Trucking Defendants".

17.    The subject motor vehicle collision giving rise to this Complaint occurred in the State of Colorado, County of Weld.

18.    Pursuant to C.R.S. § 13-1-124(1)(b), this Court has personal jurisdiction over the parties to this action as at least one of Defendants' tortious conduct occurred in the State of Colorado.

19.    Pursuant to Colo. Const. Art. VI, § 9, this Court has subject matter jurisdiction over this action because it involves a civil matter (motor vehicle accidents and negligence), and the amount in controversy exceeds $15,000.00.

20.    Pursuant to C.R.C.P. 98, venue is proper in Jefferson County which Plaintiffs designate as the place of trial of this action.

## RESPONDEAT SUPERIOR

21.     Plaintiffs incorporate the allegations in paragraphs 1-20 of this *Complaint and Jury Demand* as though fully set forth herein.

22.     Throughout this Complaint, when Plaintiffs allege that any Defendant committed any act or omission, it is meant the Defendant's agents, officers, servants, employees or representatives did commit such act or omission and that at the time such act or omission was done, it was done with the full authorization or ratification of said Defendant or was done in the normal and routine course and scope of employment of Defendant's officers, agents, servants, employees or representatives.

23.     Upon information and belief, at all times relevant hereto, the Trucking Defendants were "motor carriers" pursuant to 49 U.S.C. 13901(c), as they were responsible for the transportation of property and goods in interstate commerce.

24.     Upon information and belief, at all times pertinent hereto, Defendant Puebla was a servant, agent and statutory employee of the Trucking Defendants and was acting within the course and scope of his statutory employment for the Trucking Defendants in the furtherance of said employer's business.

25.     Accordingly, the Trucking Defendants are personally liable for all independent negligent, reckless, willful, wanton and/or intentional acts and is vicariously liable for all negligent, reckless, willful, and/or wanton acts committed by its employee, Defendant Puebla, in the course and scope of his statutory employment and for the serious injuries to Plaintiffs and damages suffered by Plaintiffs.

## GENERAL ALLEGATIONS

26.     Plaintiffs incorporate the allegations in paragraphs 1-25 of this *Complaint and Jury Demand* as though fully set forth herein.

27.     On or about June 13, 2022, Halie Everts and Tessleigh Godines were killed in a collision ("Subject Collision") caused by a semi-truck owned by Defendant Coreas, driven by Defendant Puebla and being operated pursuant to the Trucking Defendants' authority with the FMCSA and USDOT.

28.     At the time of the incident, Defendant Puebla was operating the 1999 Kenworth T800 northbound on Interstate 25 near milepost 243, in the left lane.

29.     At the time of the incident, Halie Everts and Tessleigh Godines were in the backseat of a 2015 Ford Edge traveling directly in front of Defendant Puebla in the left lane on northbound Interstate 25. The Ford Edge was owned and operated by Aaron Godines. Aaron Godines' parents, Emiliano and Christina Godines were also passengers in the Ford Edge.

30.     Defendant Puebla, while on the job and while operating a semi-truck owned, operated, and maintained by Defendant Coreas, negligently, carelessly, recklessly, and without

4

exercising reasonable care, rear-ended the vehicle that Halie Everts and Tessleigh Godines were passengers in at a very high rate of speed (70 mph).

31.    After rear ending the Ford Edge, Defendant Puebla continued northbound and rear-ended a second vehicle causing the semi to travel into the left shoulder and into the center median where he collided with the Ford Edge for a second time. The second impact forced the Ford Edge to rotate clockwise until it came to a final resting point partially on the left shoulder and partially in the center median. Defendant Puebla continued northbound and hit a cable rail before the semi came to a complete rest on its wheels facing north in the center median against the Ford Edge.

32.    Emiliano Godines, Christina Godines, Halie Everts, and Tessleigh Godines suffered fatal injuries as a direct and proximate result of the June 13, 2022 incident. Aaron Godines was transported by ambulance from the scene and later died of injuries he sustained from the incident.



33.    Defendant Puebla was determined to be at fault for the collision by the investigating police officer at the scene and was ultimately charged with five counts of Vehicular Homicide – Reckless Driving, 18-3-106(1)(a); one count of Vehicular Assault – Reckless, 18-3-205(1)(a); Careless Driving Resulting in Injury, 42-4-1402(1), (2)(b); Reckless Driving, 42-4-1401; Commercial Vehicle Safety Violation, 42-4-235; as well as operating a CMV without a CDL, 42-2-404(1).

34.    Upon information and belief, at the time of the subject collision, Defendant Puebla was knowingly operating the semi-truck while distracted in such a physical and/or mental state so as to render the operation of a motor vehicle willful, wanton, dangerous, reckless, and without regard for the safety of others, including Halie Everts and Tessleigh Godines.

35.    Upon information and belief, at the time of the subject collision, Defendant Puebla was operating a commercial vehicle as defined by the State of Colorado and was subject to driving regulations and requirements outlined by the Federal Motor Carrier Safety Act ("FMCSA").

36.    Upon information and belief, Defendant Puebla was not in possession of a commercial motor vehicle license or otherwise qualified or trained to operate a commercial vehicle, including the subject vehicle he was driving at the time of the incident.

37.     Upon information and belief, Defendant Puebla operated the subject vehicle at the time of the incident in derogation of applicable rules, guidelines, regulations, and restrictions set forth by the FMCSA or otherwise applicable to the operation of the vehicle Defendant Puebla was operating at the time of the incident.

38.     Upon information and belief, all Trucking Defendants knew or should have known that Defendant Puebla was not properly qualified or trained to operate the subject vehicle involved in the motor vehicle collision and was ill-prepared to operate the subject vehicle under the regulations, requirements, guidelines, and restrictions set forth under the FMCSA or otherwise applicable. All Trucking Defendants further did not train Defendant Puebla to operate the subject vehicle consistent with requirements, regulations, restrictions, guidelines and training applicable to the subject vehicle. Despite this knowledge, all Trucking Defendants negligently permitted Defendant Puebla to operate the subject vehicle on the day of the incident, ultimately causing serious, fatal bodily injury to Halie Everts and Tessleigh Godines.

39.     Upon information and belief, Defendant Caminantes provides interstate transportation of property and goods to customers throughout the United States, including the State of Colorado.

40.     Upon information and belief, Defendant Caminantes is a registered motor carrier and shipper with the Federal Motor Carrier Safety Administration ("FMCSA"), #MC-616117 and the United States Department of Transportation ("USDOT"), Number 1676627.

41.     Upon information and belief, Defendant Lucky 22 provides transportation of property and goods to customers throughout the State of Colorado.

42.     Upon information and belief, Defendant Lucky 22 is a registered carrier with USDOT Number 3170539.

43.     Upon information and belief, Defendant Paris West provides transportation of property and goods to customers throughout the State of Colorado.

44.     Upon information and belief, Defendant Paris West is a registered carrier with USDOT Number 3170539.

45.     Upon information and belief, Defendant Puebla was employed jointly as a statutory employee, as defined by 49 U.S.C. § 14102(a), 49 C.F.R. §§ 376.12-376.22, 49 C.F.R. § 390.5 by Defendants Caminantes, Defendant Lucky 22 and Defendant Coreas.

46.     Upon information and belief, Defendant Puebla was an employee, servant, contractor and/or agent of Defendants Caminantes, Defendant Lucky 22, and Defendant Paris West.

47.     Upon information and belief, the Trucking Defendants contracted with and/or were otherwise brokered by the United States Postal Service (hereinafter "USPS") to ship mail in the State of Colorado.

48.    At all times relevant, the Trucking Defendants were required to follow all FMCSA and Colorado State Law.

49.    At all times relevant, the Trucking Defendants owed a duty to the public, including Plaintiffs, to exercise reasonable care in the hiring, supervision, and training of its servants, agents, and/or employees.

50.    Upon information and belief, Defendant Puebla received a citation for operating a CMV without a CDL several months prior to the Subject Collision.

51.    Upon information and belief, Defendant Puebla had also previously received Citation Number 19T0003943 on August 13, 2019, in Denver County.

52.    Upon information and belief, Defendant Puebla had also previously received Citation Number D315786 on May 2, 20216, in Denver County.

53.    Upon information and belief, Defendant Puebla was also previously charged with reckless driving and accumulated 8 points on his driver's license after receiving Citation Number C971210 on February 14, 2015, in Denver County.

54.    Upon information and belief, Defendant Puebla was also previously charged with Driving Under Restraint in 2014 Case 13M08859 in Denver County.

55.    Upon information and belief, Defendant Puebla's negligent conduct that resulted in the Subject Collision was reckless.

56.    A reasonably prudent motor carrier would ensure its drivers have a clean driving history before that driver operates a company owned CMV.

57.    Upon information and belief, prior to the Subject Collision, the Trucking Defendants and Defendant Coreas had knowledge Defendant Puebla had received the above-highlighted traffic citations, including a charge in 2022 for not having a valid CDL.

58.    Upon information and belief, prior to the Subject Collision, notwithstanding the highlighted traffic citations above, the Trucking Defendants and Defendant Coreas permitted Defendant Puebla to operate the Semi.

59.    Upon information and belief, the Trucking Defendants and Defendant Coreas breached their duty to act as reasonably prudent motor carriers by allowing Defendant Puebla to operate the Semi.

60.    Upon information and belief, prior to the Subject Collision, the Trucking Defendants and Defendant Coreas had knowledge Defendant Puebla did not possess a CDL required by law for the operation of the semi.

61.     Upon information and belief, prior to the Subject Collision, the Trucking Defendants and Defendant Coreas permitted Defendant Puebla to operate a CMV owned and/or operated by and through their operating authority with the FMCSA and the USDOT.

62.     Upon information and belief, the Trucking Defendants and Defendant Coreas were not authorized to permit Defendant Puebla to operate the Semi in furtherance of their "for profit" business.

63.     Upon information and belief, the Trucking Defendants and Defendant Coreas negligently, recklessly, willfully and/or wantonly permitted Defendant Puebla to operate the semi without a CDL required by law for the operation of the semi.

64.     Upon information and belief, the Trucking Defendants and Defendant Coreas negligently, recklessly, willfully and/or wantonly permitted Defendant Puebla to operate the semi without proper CMV training.

65.     Upon information and belief, the Trucking Defendants and Defendant Coreas negligently, recklessly, willfully and/or wantonly compensated Defendant Puebla to operate the semi without a CDL or proper CMV training.

66.     Upon information and belief, the Trucking Defendants and Defendant Coreas breached their duty to act as reasonably prudent motor carriers by allowing Defendant Puebla to operate the semi without a CDL or proper CMV training.

67.     A reasonably prudent motor carrier would ensure its drivers possess valid medical certificates required by law for the operation of a CMV.

68.     Upon information and belief, the Trucking Defendants and Defendant Coreas had knowledge Defendant Puebla did not have a valid medical certificate required by law for the operation of the semi.

69.     Upon information and belief, the Trucking Defendants and Defendant Coreas negligently, recklessly, willfully and/or wantonly permitted Defendant Puebla to operate the semi without a valid medical certificate required by law for the operation of the semi.

70.     Upon information and belief, the Trucking Defendants and Defendant Coreas breached their duty to act as reasonably prudent motor carriers by allowing Defendant Puebla to operate the semi without a valid medical certificate required by law for the operation of the semi.

71.     A reasonably prudent motor carrier would ensure a CMV is safe to operate without defective brakes.

72.     A reasonably prudent motor carrier is required under the FMCSA to regularly inspect maintain brakes on CMVs, as well as inspect any CMV prior to each operation.

73.     Upon information and belief, at the time of the Subject Collision, the semi under the custody and control of the Trucking Defendants and Defendant Coreas had defective and

unmaintained brakes.

74.    Upon information and belief, at the time of the Subject Collision, the defective and unmaintained brakes constituted more than twenty percent of all service brakes on the semi.

75.    Upon information and belief, the defective and unmaintained brakes made the semi dangerous and unsuitable for travel on the roadways.

76.    Upon information and belief, the Trucking Defendants and Defendant Coreas breached their duty to act as reasonably prudent motor carriers by providing to and allowing Defendant Puebla to operate the semi with defective brakes.

77.    Upon information and belief, at the time of the Subject Collision, the semi under the custody and control of the Trucking Defendants and Defendant Coreas was not equipped with an Antilock Brake System.

78.    Upon information and belief, the lack of an Antilock Brake System made the semi dangerous and unsuitable for travel on the roadways.

79.    Upon information and belief, the Trucking Defendants and Defendant Coreas breached their duty to act as reasonably prudent motor carriers by allowing Defendant Puebla to operate the semi without an Antilock Brake System.

80.    Upon information and belief, at the time of the Subject Collision the semi under the custody and control of the Trucking Defendants and Defendant Coreas had clamp or roto-type brakes out of adjustment.

81.    Upon information and belief, the clamp or roto-type brakes made the semi dangerous and unsuitable for travel on roadways.

82.    Upon information and belief, the Trucking Defendants and Defendant Coreas breached their duty to act as reasonably prudent motor carriers by allowing Defendant Puebla to operate the semi with clamp or roto-type brakes out of adjustments.

83.    Upon information and belief, at the time of the Subject Collision, the semi under the custody and control of the Trucking Defendants and Defendant Coreas had an automatic airbrake adjustment system that failed to compensate for wear.

84.    Upon information and belief, the automatic airbrake adjustment system made the semi dangerous and unsuitable for travel on roadways.

85.    Upon information and belief, the Trucking Defendants and Defendant Coreas breached their duty to act as reasonably prudent motor carriers by allowing Defendant Puebla to operate the semi with an automatic airbrake adjustment system that failed to compensate for wear.

86.    Upon information and belief, the actions of the Trucking Defendants and Defendant

Coreas of sending a vehicle onto public roadways without compliant brakes was reckless.

87.    Upon information and belief, the Trucking Defendants and Defendant Coreas failed to act as reasonably prudent motor carriers.

88.    Upon information and belief, the Trucking Defendants and Defendant Coreas negligently, recklessly, and willfully and/or wantonly breached their duty to act as reasonably prudent motor carriers by not ensuring the semi had complaint brakes.

89.    Upon information and belief, the Trucking Defendants and Defendant Coreas's failure to act as reasonably prudent motor carriers was a direct and proximate cause of the Subject Collision.

90.    Upon information and belief, the Trucking Defendants and Defendant Coreas, acting through their agents, servants and/or employees, in the course and scope of employment, were guilty of acts of negligence and/or negligence per se, recklessness, and willful and/or wanton acts, each of which jointly and severally proximately caused the injuries to and deaths of Halie Everts and Tessleigh Godines and the damages suffered by Plaintiffs.

## FIRST CLAIM FOR RELIEF
### (*Negligence and/or Recklessness – Defendant Puebla*)

91.    Plaintiffs incorporate the allegations in paragraphs 1-90 of this *Complaint and Jury Demand* as though fully set forth herein.

92.    Defendant Puebla owed Plaintiff a duty to use reasonable care in the operation of his vehicle.

93.    Defendant breached the above referenced duty, without limitation, in the following ways:
   a.    Failing to maintain control of his vehicle;
   b.    Failing to keep a proper lookout;
   c.    Failing to maintain a safe and proper stopping distance;
   d.    Traveling too fast for conditions;
   e.    Operating the semi which had dangerous, defective, and unmaintained brakes and safety equipment;
   f.    Operating his vehicle in a careless manner.

94.    Halie Everts and Tessleigh Godines died as a result of fatal injuries sustained when they were struck by the Semi driven by Defendant Puebla and owned and operated by the Trucking Defendants and Defendant Coreas on the date of the Subject Collision.

95.    Halie Everts and Tessleigh Godines's deaths were caused by the reckless and/or negligent driving conduct of Defendant Puebla at the time of the Subject Collision.

96.    Halie Everts and Tessleigh Godines were not negligent or at-fault in any way at the

10

time of, and immediately prior to, the Subject Collision resulting in their deaths.

97.     As a result of Defendant Puebla's recklessness and/or negligence, which caused the wrongful deaths of Halie Everts and Tessleigh Godines, Plaintiffs sustained mental, emotional and psychological injuries, damages, and losses, including, but not limited to, economic losses and non-economic losses pursuant to C.R.S. §13-21-201, et seq.

98.     As a direct and proximate result of Halie Everts and Tessleigh Godines's death, Plaintiffs have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in this Complaint and Colorado's wrongful death statute.

## SECOND CLAIM FOR RELIEF
### (Negligence Per Se – Defendant Flores)

99.     Plaintiff incorporates the allegations in paragraphs 1-98 of this *Complaint and Jury Demand* as though fully set forth herein.

100.    Defendant Puebla, through his negligent, careless, reckless and wrongful acts and omissions, violated applicable codes, ordinances, regulations and/or statutes of the State of Colorado or the United States including, but not limited to, the following:

    a.     Colorado Revised Statutes § 42-4-1008, Following too Closely;
    b.     Colorado Revised Statutes § 42-4-1401, Reckless Driving;
    c.     Colorado Revised Statutes § 42-4-1402, Careless Driving;
    d.     Colorado Revised Statutes § 42-4-1101, Speed Limits;
    e.     Colorado Revised Statutes § 18-3-106(1)(a), Vehicular Homicide.

101.    The purpose of the aforementioned codes, ordinances, regulations and statutes was to protect against the type of injuries and damages Plaintiffs sustained as a result of this incident.

102.    Plaintiffs were members of the group of persons that the aforementioned codes, ordinances, regulations and/or statutes were intended to protect.

103.    Consequently, Defendant Puebla's conduct constitutes negligence *per se*.

104.    As a direct and proximate result of Defendant Puebla's negligence *per se*, Plaintiffs suffered injuries, losses and damages as described herein.

105.    As a direct and proximate result of the negligence *per se* of Defendant Puebla, Halie Everts and Tessleigh Godines were killed.

106.    As a direct and proximate result of Halie Everts and Tessleigh Godines's deaths, Plaintiffs have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in Colorado's wrongful death statute and in this Complaint.

### THIRD CLAIM FOR RELIEF
(*Negligence – Trucking Defendants*)

107.    Plaintiffs incorporate the allegations in paragraphs 1-106 of this *Complaint and Jury Demand* as though fully set forth herein.

108.    Upon information and belief, Defendant Caminantes conducts trucking operations throughout the United States, but frequently relies on smaller regional carriers and local owner operators, especially when their customers' needs cannot be met with its own fleet.

109.    Upon information and belief, Defendant Caminantes and its agents regularly contract with regional and local trucking companies for purposes of satisfying contractual obligations as a carrier and the commitments it makes to customers.

110.    Defendant Caminantes has an obligation and duty to determine whether the regional and local trucking companies it contracts with are safe, reliable, and conduct their operations in compliance with relevant Federal and state safety regulations.

111.    Thus, at all relevant times, Defendant Caminantes had an obligation and a duty to exercise reasonable care in the control and oversight of the regional trucking company selected to satisfy its contractual obligation to USPS to deliver the shipment it assigned to Defendant Lucky 22 and/or Defendant Paris West and/or to Defendant Puebla for transport.

112.    At all relevant times, Defendant Caminantes held itself as the motor carrier for shipment.

113.    Upon information and belief, Defendant Caminantes was hired by or contracted with the USPS for the shipment of USPS mail and freight and as a result, Defendant Caminantes was a "hidden motor carrier" responsible under the FMCSA and USDOT for compliance with all Federal and State laws and regulations for the shipment of the load on the date of the Subject Collision.

114.    At all relevant times, Defendant Caminantes was obligated to transport the shipment.

115.    At all times relevant, Defendant Caminantes was subject to and required to obey the minimum safety standards established and set forth in the Federal Motor Carrier Safety Regulations (hereinafter "FMCSR"), 49 CFR Parts 300-399, either directly or as adopted by the Colorado State Patrol Rules and Regulations Concerning Minimum Standards for the Operation of Commercial Vehicles 8 CCR 1507-1:MCS 6 and pursuant to C.R.S. § 42-4-235(4)(a).

116.    At all relevant times, Defendant Caminantes also had an obligation and a duty to exercise reasonable care in the management and control of the transport of those loads it contracted to deliver, and as the contracting trucking company it had a non-delegable duty to comply with relevant Federal safety regulations.

117.    At all relevant times, Defendant Caminantes had a duty to conduct a due diligence safety review before contracting with any local trucking company.

118.    Defendant Caminantes had the capacity and ability to determine whether the regional and local trucking companies it contracts with are reliable and conduct their operations in compliance with relevant Federal and state safety regulations, as such information is readily available through the FMCSA and other resources regularly relied upon in the trucking and logistics industry.

119.    It is part of the minimum standards for companies like Defendant Caminantes to make safety inquiries as part of qualifying and retaining trucking companies before contracting with them.

120.    It is part of the minimum standards for companies like Defendant Caminantes to make safety inquiries on a regular basis after contracting with a trucking company.

121.    Upon information and belief, the owners of the Trucking Defendants were father and son and acted in an orchestrated manner to subvert the rules, regulations and laws of the FMCSA, USDOT and the State of Colorado.

122.    Upon information and belief, at all relevant times, Defendant Caminantes had prior dealings with Defendant Lucky 22, Defendant Paris West, and/or Defendant Puebla, and knew or had reason to know that they required and permitted drivers to operate commercial motor vehicles in violation of the FMCSR CDL requirements and required and permitted drivers to operate commercial motor vehicles without providing a FMCSR required medical certificate.

123.    At all relevant times, Defendant Caminantes was acting through their employees and/or agents and are responsible for the acts of those employees and/or agents pursuant to respondeat superior, agency, vicarious liability, statutory employment doctrines, negligent entrustment, negligent hiring of an independent contractor, partnership, joint enterprise, and/or other similar theories of law.

124.    At all relevant times, Defendant Caminantes was the motor carrier.

125.    Upon information and belief, at all relevant times, Defendant Lucky 22 and/or Defendant Paris West were sub-carriers.

126.    Preceding the Subject Collision, the FMCSA made information available to the public regarding the safety records of Defendant Lucky 22 and/or Defendant Paris West.

127.    The publicly available information revealed Defendant Lucky 22 and/or Defendant Paris West underwent a total of two driver inspections with problems in 50% of the inspections.

128.    The publicly available information also revealed a vehicle owned by Defendant Lucky 22 and/or Defendant Paris West was involved in at least one towaway crash.

129.    The publicly available information also revealed Defendant Lucky 22 and/ or Defendant Paris West had an out of service (hereinafter "OOS") rating of 100 percent.

130.    The OOS rating meant every vehicle owned by Defendant Lucky 22 and/or Defendant Paris West could not pass safety inspection.

131.    Upon information and belief, that Defendant Lucky 22 and/or Defendant Paris West could not pass inspection meant the vehicles were unsafe to operate on public roadways.

132.    Upon information and belief, that Defendant Lucky 22 and/or Defendant Paris West could not pass inspection meant there was a 100% chance any vehicle dispatched would not be able to meet delivery schedules, either due to an actual mechanical breakdown or due to a random roadside inspection resulting in an OOS violation.

133.    The publicly available information also revealed Defendant Lucky 22 and/or Defendant Paris West did not have current for-hire operating authority with the FMCSA.

134.    Upon information and belief, notwithstanding having knowledge or a reason to know about the substandard safety records of Defendant Lucky 22 and/or Defendant Paris West, or the critical fact it did not have current for-hire operating authority with the FMCSA, Defendant Caminantes nonetheless negligently, carelessly and recklessly retained, hired, supervised, and/or contracted with Defendant Lucky 22 and/or Defendant Paris West by negligently entrusting them to make a time sensitive interstate delivery of mail on behalf of the USPS while having knowledge or a reason to know they would inevitably result in safety risks to the public, including Halie Everts and Tessleigh Godines.

135.    Upon information and belief, at all relevant times, Defendant Caminantes had the capacity, ability, and duty to exercise direct control over the specific details of transport of the subject delivery, including logistics, dispatching, scheduling, rescheduling, route planning, rerouting, and load consolidation, as well as compliance with relevant Federal safety regulations.

136.    Upon information and belief, the Trucking Defendants and Defendant Coreas (hereinafter "the Joint Venturers") operated a joint enterprise and/or joint venture for the transport of freight under which they shared control and profits arising out of the transport of such goods, under which, Defendant Puebla and/or Defendant Lucky 22, and/or Defendant Paris West, and/or Defendant Coreas were Defendant Caminantes' agents, employees, and/or joint venturers such that Defendant Caminantes was responsible for their acts and omissions pursuant to respondeat superior, agency, vicarious liability, statutory employment doctrines, negligent hiring of an independent contractor, partnership, joint enterprise, and/or other similar theories of law.

137.    Upon information and belief, at all relevant times, Defendant Caminantes had actual and/or constructive knowledge Defendant Puebla was operating the Semi in violation of federal safety regulations, including FMCSR out-of-service rules, in the course of fulfilling Defendant Caminantes' contractual obligations and while under Defendant Caminantes' direct supervision and control, but made no attempt to reschedule the load delivery or otherwise adjust

the delivery schedule in order to afford Puebla a reasonable opportunity to remain in compliance with FMCSR, CDL and medical certificate requirements, all in violation of Defendant Caminantes' direct and non-delegable obligations under applicable law, including FMCSR.

138.     As a direct and proximate result of Defendant Caminantes' negligent, careless, and/or reckless conduct as alleged herein, Defendant Puebla was aided, abetted, and induced into working without being properly licensed to operate a commercial motor vehicle, all of which proximately caused the Subject Collision and the injuries and deaths of Halie Everts and Tessleigh Godines.

139.     Defendant Caminantes, knew, had reason to know, or should have known by exercising reasonable care, about the risks set forth in this complaint and that by simply exercising reasonable care these risks would be reduced or eliminated. These risks include, but are not limited to:

a.    The risks associated with unsafe trucking companies;
b.    The risks associated with trucking companies that fail to have adequate risk management policies and procedures in place;
c.    Failing to ensure the trucking company had current for-hire operating authority with the FMCSA;
d.    Failing to have policies and procedures in place to identify unsafe trucking companies;
e.    Failure to appropriately implement and enforce risk management policies and procedures to monitor and assess Lucky 22 once hired;
f.    Failing to implement and follow a written safety plan
g.    Failing to protect the members of the public, such as the Plaintiff, from the risks described above;
h.    Failing to ensure that Defendant Puebla was prudently hired, trained, and supervised to operate a CMV;
i.    Failing to use the composite knowledge reasonably available to Defendants to analyze the data available to it to identify the risk, take steps to reduce or eliminate the risk, and to protect members of the public from that risk;
j.    Failing to appropriately implement and enforce risk management policies and procedures to identify the risks described above.

140.     By reason of, and as a direct and proximate result of Defendant Caminantes' breaches of the above duties, which were a cause of the injuries and deaths of Halie Everts and Tessleigh Godines, the claimants have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as set forth in Colorado's wrongful death statute and this Complaint.

## FOURTH CLAIM FOR RELIEF
### (*Vicarious Liability – Defendant Lucky 22 and/or Defendant Paris West*)

141.     Plaintiffs incorporate the allegations in paragraphs 1-140 of this *Complaint and Jury Demand* as though fully set forth herein.

142.    Upon information and belief, Defendant Puebla was an employee of Defendant Lucky 22 and/or Defendant Paris West.

143.    Upon information and belief, Defendant Lucky 22 and/or Defendant Paris West were acting as employer and principal of Defendant Puebla at the time of the Subject Collision.

144.    Upon information and belief, Defendant Puebla was acting within the course and scope of his employment at the time of the Subject Collision.

145.    Upon information and belief, by virtue of Defendant Puebla being an employee of Defendant Lucky 22 and/or Defendant Paris West, and because he was acting within the scope of his employment at the time of the Subject Collision, the acts and omissions of Defendant Puebla are deemed to be the acts and omissions of Defendant Lucky 22 and/or Defendant Paris West under the doctrine of *Respondeat Superior*.

146.    Upon information and belief, consequently, Defendant Lucky 22 and/or Defendant Paris West are liable for the acts and omissions of Defendant Puebla and for Plaintiffs' resulting injuries and damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in Colorado's wrongful death statute and this Complaint.

## FIFTH CLAIM FOR RELIEF
### (*Negligent and/or Reckless Training and Supervision - Defendant Lucky 22, Defendant Paris West and Defendant Coreas*)

147.    Plaintiffs incorporate the allegations in paragraphs 1-146 of this *Complaint and Jury Demand* as though fully set forth herein.

148.    Upon information and belief, at all times material hereto, Defendant Puebla served as an employee of, and for, Defendant Lucky 22 and/or Defendant Paris West and for Defendant Coreas.

149.    Upon information and belief, Defendant Puebla was acting within the course and scope of his employment with Defendant Lucky 22, Defendant Paris West, and Defendant Coreas at the time of the subject incident.

150.    Upon information and belief, Defendant Lucky 22, Defendant Paris West, and Defendant Coreas owed the public, including Plaintiffs, a duty of reasonable care to properly train and supervise its employees, particularly employees such as Defendant Puebla whose job duties included the operation of a CMV on public highways.

151.    Upon information and belief, Defendant Lucky 22, Defendant Paris West, and Defendant Coreas breached its duty to properly train and supervise Defendant Jesus Puebla.

152.    Upon information and belief, the failure to exercise reasonable care by Defendant Lucky 22, Defendant Paris West, and Defendant Coreas in properly training and supervising Defendant Puebla constitutes negligence and/or recklessness which directly and proximately

caused Plaintiffs to suffer injuries, losses, and damages.

153.    Upon information and belief, as a direct and proximate result of the negligent and/or reckless training and supervision of Defendant Puebla by Defendant Lucky 22, Defendant Paris West, and Defendant Coreas, Halie Evert and Tessleigh Godines were killed.

154.    As a direct and proximate result of Halie Everts and Tessleigh Godines's deaths, Plaintiffs have suffered damages for grief, loss of companionship, pain and suffering, and emotional stress and other such other damages as are set forth in Colorado's wrongful death statute and this Complaint.

## TENTH CLAIM FOR RELIEF

### (Negligent Entrustment - Defendant Lucky 22, Defendant Paris West and/or Defendant Coreas)

155.    Plaintiffs incorporate the allegations in paragraphs 1-154 of this *Complaint and Jury Demand* as though fully set forth herein.

156.    Upon information and belief, as the registered owner of the Semi, Defendant Lucky 22, Defendant Paris West, and/or Defendant Coreas had a duty to ensure any driver of the truck was properly qualified and licensed not only to safely operate the truck on public highways, but to inspect the truck for any safety issues.

157.    Upon information and belief, as the registered owner of the Semi, Defendant Lucky 22, Defendant Paris West, and/or Defendant Coreas negligently entrusted the Semi to Defendant Puebla by knowingly permitting the operation of the truck on public highways by a driver without a CDL.

158.    Upon information and belief, Defendant Lucky 22, Defendant Paris West, and/or Defendant Coreas knew or should have known Defendant Puebla had been cited for not having a CDL prior to the Subject Collision in 2022.

159.    Upon information and belief, Defendant Lucky 22, Defendant Paris West, and/or Defendant Coreas' conduct of knowingly permitting the operation of the truck on public highways by a driver without a CDL or valid medical certificate was reckless.

160.    Upon information and belief, Defendant Lucky 22, Defendant Paris West, and/or Defendant Coreas' conduct of knowingly permitting the operation of the truck on public highways with defective and unsafe brakes was reckless.

161.    Upon information and belief, Defendant Lucky 22, Defendant Paris West, and/or Defendant Coreas' conduct of entrusting a CMV into the hands of Defendant Puebla, who was not licensed, trained or qualified to operate a CMV on the highways of Colorado was a cause of the Subject Collision that killed Halie Everts, Tessleigh Godines, Emiliano Godines, Christina Godines, and Aaron Godinez.

162.    Defendant Lucky 22, Defendant Paris West, and Defendant Coreas's reckless

17

conduct resulted in the deaths of Halie Everts, Tessleigh Godines, Emiliano Godines, Christina Godines, and Aaron Godinez.

163.    The reckless killing of Halie Everts and Tessleigh Godines caused the Plaintiffs severe emotional distress and harm.

## DAMAGES FOR WRONGFUL DEATH

164.    Plaintiffs incorporate the allegations in paragraphs 1-163 of this *Complaint and Jury Demand* as though fully set forth herein.

165.    As a direct and proximate result of the negligent, egregious, reckless, willful, and wanton conduct by all Defendants, the Plaintiffs have suffered severe harm and damages, including economic damages and damages for non- economic loss for grief, loss of companionship, pain and suffering, and emotional distress.

166.    The acts and omissions and conduct of the Defendants was reckless, willful, and wanton, and done in a complete disregard for the lives of the deceased family members and the rights of the Plaintiffs, resulting in severe damages for grief, loss of companionship, pain and suffering, and emotional stress.

167.    Plaintiffs request a determination by jury of amounts necessary for all compensatory damages for the felonious vehicular homicide pursuant to C.R.S. § 15- 11-803(1)(b).

**WHEREFORE**, Plaintiffs, Steven Everts and Desiree Everts, respectfully requests that judgment be entered in their favor and against Defendants, Jesus Puebla, Caminantes Transportation, Inc. d/b/a Caminantes Trucking, Carlos Coreas a/k/a Carlos, Lucky 22, Inc., Paris West Trucking, Inc., for such damages that a jury determines to be fair and reasonable, for actual damages, together with prejudgment and post-judgment interest, costs of suit, and for each other and further relief as the Court deems just and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

DATED this 9th day of February 2023.

Respectfully submitted,

**JORDAN HERINGTON & ROWLEY**

*s/ Michael S. Douglass-Harris*
Jason W. Jordan
Michael J. Rosenberg
Michael S. Douglass-Harris

**BOWMAN LAW, LLC**
Jerry R. Bowman

*Attorneys for Plaintiffs*

**Plaintiffs Address:**
32 Sierra Circle
Gillette, WY 82716