

Date: October 20, 2022
Policy Number:  952248958-000
Claim Number:   22-5559536
Progressive Entity:  Artisan and Truckers Casualty Company

I certify that each of the following is true regarding the attached records, to the best
of my knowledge and belief:

1.  I am an employee familiar with the manner and process in which these
    records are created and maintained by virtue of my duties and
    responsibilities;

2.  The records were made at or near the time of the occurrences of the
    matters set forth by, or from information transmitted by, people with
    knowledge of those matters;

3.  The records were kept in the course of regularly conducted business
    activity; and

4.  It was the regular practice of the business activity to make the record.

*Cindy Sweeney*
*Cindy Sweeney*

PGI/MEDINA
81 W 84TH AVE 160
THORNTON, CO 80260

**_PROGRESSIVE_**®
COMMERCIAL

Named insured

LUCKY 22 INC
LUCKY 22 INC
██████████

**Policy number:  952248958**
Underwritten by:
Artisan and Truckers Casualty Co
January 20, 2022
Policy Period: Sep 10, 2021 - Sep 10, 2022
Page 1 of 4

**progressiveagent.com**
**Online Service**
Make payments, check billing activity, print
policy documents, update your policy or
check the status of a claim.

**1-303-227-9010**
**PGI/MEDINA**
Contact your agent for personalized service.

**1-800-444-4487**
For customer service if your agent is
unavailable or to report a claim.

# Commercial Auto
# Insurance Coverage Summary
## This is your Declarations Page
## Your coverage has changed

Your coverage began the later of September 10, 2021 at 12:01 a.m. or the effective time shown on your application. This policy period ends on September 10, 2022 at 12:01 a.m.

This coverage summary replaces your prior one. Your insurance policy and any policy endorsements contain a full explanation of your coverage. The policy limits shown for an auto may not be combined with the limits for the same coverage on another auto, unless the policy contract allows the stacking of limits. The policy contract is form 6912 (02/19). The contract is modified by forms 2852CO (02/19), 4757CO (02/19), MCS90 (99/99), 1303 (11/07), 1198 (07/16), 2366 (02/11), 8610 (02/19), 2367 (06/10), 4852CO (06/05), 4881CO (02/19) and Z228 (01/11).

The named insured organization type is a corporation.

## Policy changes effective December 4, 2021

| | |
|---|---|
| Changes processed on: | January 19, 2022 6:07 p.m. |
| Premium change: | $0.00 |
| Changes: | Fernando A Robles has been added to the policy. |
| | Fernando Antonio Robles has been removed from the policy. |

The changes shown above will not be effective prior to the time the changes were requested.


Continued

Policy number: 952248958
LUCKY 22 INC
Page 2  of 4

## Outline of coverage

| Policy level coverage | Limits | Deductible | Premium |
|---|---|---|---|
| Uninsured/Underinsured Motorist | $1,000,000 combined single limit | | |
| **Total policy level coverage** | | | |

| Summary level coverage | Limits | Deductible | |
|---|---|---|---|
| Liability To Others | | | |
| Bodily Injury and Property Damage Liability | $1,000,000 combined single limit | | |
| Uninsured Motorist Property Damage | Rejected | | |
| Medical Payments | $5,000 each person | | |
| Comprehensive | | | |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| Collision | | | |
| See Auto Coverage Schedule | Limit of liability less deductible | | |
| **Total summary of coverage** | | | |
| **Subtotal policy premium** | | | |
| Waiver of Subrogation Fee | | | |
| Additional Insured Fee | | | |
| Blanket Waiver of Subrogation Fee | | | |
| Blanket Additional Insured Fee | | | |
| **Total 12 month policy premium and fees** | | | |

## Rated and Excluded drivers

## Important information regarding excluded drivers

If any drivers are shown as excluded drivers, then you agree that there is no coverage under any parts of this policy, for any accidents or loss arising out of the operation of any motor vehicles by the excluded drivers.

| | | Additional information |
|---|---|---|
| 1. | CARLOS COREAS ARAUJO | Excluded |
| 2. | SERGIO BURCIAGA | |
| 3. | Fernando A Robles | |

## Auto coverage schedule

1.  **2002 PETERBILT 378**  Stated Amount: * $20,000 (including Permanently Attached Equip)
    VIN: **1XPFDU9**  [ ]  Garaging Zip Code: 80004  Radius: 50 miles
    Personal use: N  Body type: Truck Tractor



| Liability Premium | Liability Premium | Med Pay Premium | | |
|---|---|---|---|---|
| Physical Damage Premium | | | sion ium | Auto Total |
| | | | 8 | |

2.  **2030 Non-owned Attached Trailer ****
    VIN: **None**  Garaging Zip Code: 80004  Radius: 50 miles
    Personal use: N  Body type: 20

| Liability Premium | Liability Premium | | Auto Total |
|---|---|---|---|
| | | | |





Continued

Policy number: 952248958
LUCKY 22 INC
Page 3  of 4

3. **2006 VOLVO VN**  Stated Amount: * $20,000 (including Permanently Attached Equip)
   VIN: **4V4NC9TG6**▉▉▉▉▉  Garaging Zip Code: 80004  Radius: 50 miles
   Personal use: N  Body type: Truck Tractor

Liability
Premium



Physical Damage
Premium

4. **2000 PETERBILT 379**  Stated Amount: * $20,000 (including Permanently Attached Equip)
   VIN: **1XP5A**▉▉▉▉▉  Garaging Zip Code: 80004  Radius: 50 miles
   Personal use: N  Body type: Truck Tractor

Liability
Premium



Physical Damage
Premium

5. **2030 Non-owned Attached Trailer ***
   VIN: **None**  Garaging Zip Code: 80004  Radius: 50 miles
   Personal use: N  Body type: 20

Liability
Premium

| Liability Premium |
| --- |
| $194 |

6. **2030 Non-owned Attached Trailer ***
   VIN: **None**  Garaging Zip Code: 80004  Radius: 50 miles
   Personal use: N  Body type: 20

Liability
Premium

| Liability Premium |
| --- |
| $194 |

7. **2008 KENWORTH CONSTRUCTION**  Stated Amount: * $25,000 (including Permanently Attached Equip)
   VIN: **1XKADB9**▉▉▉▉▉  Garaging Zip Code: 80004  Radius: 50 miles
   Personal use: N  Body type: Truck Tractor

Liability
Premium

| Liability Premium | Med Pay Premium |
| --- | --- |
| $6993 | $23 |

Physical Damage
Premium

| Comp Deductible | Comp Premium | Collision Deductible | Collision Premium |
| --- | --- | --- | --- |
| $500 | $934 | $500 | $1047 |

8. **2030 Non-owned Attached Trailer ***
   VIN: **None**  Garaging Zip Code: 80004  Radius: 50 miles
   Personal use: N  Body type: 20

Liability
Premium

| Liability Premium |
| --- |
| $194 |

*A vehicle's stated amount should indicate its current retail value, including any special or permanently attached equipment.  In the event of a total loss, the maximum amount payable is the lesser of the Stated Amount or Actual Cash Value, less deductible.  Be sure to check stated amount at every renewal in order to receive the best value from your Progressive Commercial Auto policy.

**Non-Owned trailer but only while attached to a listed power unit specifically described on the declarations page.



Continued

## Premium discount

| Policy | |
|---|---|
| 952248958 | Electronic Funds Transfer |

## Additional Insured information

Blanket Additional Insured applies.

| | | |
|---|---|---|
| 1. | Additional Insured | IRON WOMAN CONSTRUCION |
| | | 5680 EMERSON ST |
| | | DENVER, CO 80216 |

## Waiver of Subrogation information

Blanket Waiver of Subrogation applies.

| | | |
|---|---|---|
| 1. | Waiver of Subrogation | IRON WOMAN CONSTRUCTION |
| | | 5680 EMERSON ST |
| | | DENVER, CO 80216 |

## Company officers

Secretary



Progressive
P.O. Box 94739
Cleveland, OH 44101

September 11, 2021
Policy number: 952248958

LUCY 22 INC

Enclosed is the MCS90.

Please retain this copy for your records.

If this endorsement subjects the Company to public liability for negligence in the insured's operation, maintenance or use of motor vehicles, you are required to inform us of all vehicles that are commercially owned or operated by the insured and to list them on your policy. Please review the current policy declaration page and inform us promptly of any additional vehicles that need to be listed. If you acquire (or acquire the services of) any additional commercially owned or operated vehicles in the future, you must promptly notify us of each such additional vehicle. Failure to promptly inform us of, and list, all current and future commercially owned or operated vehicles may result in the cancellation or nonrenewal of this policy, or in a premium increase.

Thank you,
Commercial Auto
Permit Issuance and Verification
1-800-444-4487

Form COVERLTR (06/04)

**Please note, the expiration date as stated on this form relates to the process for renewing the Information Collection Request for this form with the Office of Management and Budget. This requirement to collect information as requested on this form does not expire. For questions, please contact the Office of Registration and Safety Information, Registration, Licensing, and Insurance Division.**

A Federal Agency may not conduct or sponsor, and a person is not required to respond to, nor shall a person be subject to a penalty for failure to comply with a collection of information subject to the requirements of the Paperwork Reduction Act unless that collection of information displays a current valid OMB Control Number. The OMB Control Number for this information collection is 2126-0008. Public reporting for this collection of information is estimated to be approximately 2 minutes per response, including the time for reviewing instructions, gathering the data needed, and completing and reviewing the collection of information. All responses to this collection of information are mandatory. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden to: Information Collection Clearance Officer, Federal Motor Carrier Safety Administration, MC-RRA, Washington, D.C. 20590.

**U.S. Department
of Transportation**
Federal Motor Carrier
Safety Administration

OMB No: 2126-0008
Expiration: 03/31/2021
Form MCS-90 Revised 10/02/2020

USDOT Number: 3170539 _____    Date Received: _____

## FORM MCS-90
## ENDORSEMENT FOR MOTOR CARRIER POLICIES OF INSURANCE FOR PUBLIC LIABILITY
### UNDER SECTIONS 29 AND 30 OF THE MOTOR CARRIER ACT OF 1980

Issued to LUCY 22 INC, LUCKY 22 INC _____

(Motor Carrier name)

_____

(Motor Carrier state or province)

Dated at 04:35 PM on this 11th day of September, 2021
Amending Policy Number: CA 952248958 Effective Date: 09/10/2021
Name of Insurance Company: Artisan and Truckers Casualty Co

Countersigned by: _____

Authorized company representative

The policy to which this endorsement is attached provides primary or excess insurance, as indicated for the limits shown (check only one):

[X] This insurance is primary and the company shall not be liable for amounts in excess of $750,000 for each accident.

[ ] This insurance is excess and the company shall not be liable for amounts in excess of $_____ for each accident in excess of the underlying limit of $_____ for each accident.

Whenever required by the Federal Motor Carrier Safety Administration (FMCSA), the company agrees to furnish the FMCSA a duplicate of said policy and all its endorsements. The company also agrees, upon telephone request by an authorized representative of the FMCSA, to verify that the policy is in force as of a particular date. The telephone number to call is: 1-800-444-4487.

Cancellation of this endorsement may be effected by the company or the insured by giving (1) thirty-five (35) days notice in writing to the other party (said 35 days notice to commence from the date the notice is mailed, proof of mailing shall be sufficient proof of notice), and (2) if the insured is subject to the FMCSA's registration requirements under 49 U.S.C. 13901, by providing thirty (30) days notice to the FMCSA (said 30 days notice to commence from the date the notice is received by the FMCSA at its office in Washington, D.C.).

**Filings must be transmitted online via the Internet at http://www.fmcsa.dot.gov/urs**

## DEFINITIONS AS USED IN THIS ENDORSEMENT

**ACCIDENT** includes continuous or repeated exposure to conditions or which results in bodily injury, property damage, or environmental damage which the insured neither expected nor intended.

**MOTOR VEHICLE** means a land vehicle, machine, truck, tractor, trailer, or semitrailer propelled or drawn by mechanical power and used on a highway for transporting property, or any combination thereof.

**BODILY INJURY** means injury to the body, sickness, or disease to any person, including death resulting from any of these.

**PROPERTY DAMAGE** means damage to or loss of use of tangible property.

**ENVIRONMENTAL RESTORATION** means restitution for the loss, damage, or destruction of natural resources arising out of the accidental discharge, dispersal, release or escape into or upon the land, atmosphere, watercourse, or body of water, of any commodity transported by a motor carrier. This shall include the cost of removal and the cost of necessary measures taken to minimize or mitigate damage to human health, the natural environment, fish, shellfish, and wildlife.

**PUBLIC LIABILITY** means liability for bodily injury, property damage, and environmental restoration.

The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured, within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Motor Carrier Safety Administration (FMCSA).

In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere. Such insurance as is afforded, for public liability, does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo. It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon,

or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured. However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

It is further understood and agreed that, upon failure of the company to pay any final judgment recovered against the insured as provided herein, the judgment creditor may maintain an action in any court of competent jurisdiction against the company to compel such payment.

The limits of the company's liability for the amounts prescribed in this endorsement apply separately to each accident and any payment under the policy because of anyone accident shall not operate to reduce the liability of the company for the payment of final judgments resulting from any other accident.

## SCHEDULE OF LIMITS - PUBLIC LIABILITY

| Type of Carriage | Commodity Transported | January 1, 1985 |
|---|---|---|
| **(1)** For-hire (in interstate or foreign commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Property (nonhazardous) | $750,000 |
| **(2)** For-hire and Private (in interstate, foreign, or intrastate commerce, with a gross vehicle weight rating of 10,000 or more pounds). | Hazardous substances, as defined in 49 CFR 171.8, transported in cargo tanks, portable tanks, or hopper-type vehicles with capacities in excess of 3,500 water gallons; or in bulk Division 1.1, 1.2, and 1.3 materials, Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; in bulk Division 2.1 or 2.2; or highway route controlled quantities of a Class 7 material, as defined in 49 CFR 173.403. | $5,000,000 |
| **(3)** For-hire and Private (in interstate or foreign commerce, in any quantity; or in intrastate commerce, in bulk only; with a gross vehicle weight rating of 10,000 or more pounds). | Oil listed in 49 CFR 172.101; hazardous waste, hazardous materials, and hazardous substances defined in 49 CFR 171.8 and listed in 49 CFR 172.101, but not mentioned in (2) above or (4) below. | $1,000,000 |
| **(4)** For-hire and Private (In interstate or foreign commerce, with a gross vehicle weight rating of less than 10,000 pounds). | Any quantity of Division 1.1, 1.2 or 1.3 material; any quantity of a Division 2.3, Hazard Zone A, or Division 6.1, Packing Group I, Hazard Zone A material; or highway route controlled quantities of a Class 7 material as defined in 49 CFR 173.403. | $5,000,000 |

* The schedule of limits shown does not provide coverage. The limits shown in the schedule are for information purposes only.

PGI/MEDINA
81 W 84TH AVE 160
THORNTON, CO 80260

*PROGRESSIVE*®
COMMERCIAL

**Policy number: 952248958**
Underwritten by:
Artisan and Truckers Casualty Co
Insured:
LUCY 22 INC
September 13, 2021
Policy Period: Sep 10, 2021 - Sep 10, 2022

LUCY 22 INC
LUCKY 22 INC
█████████

**Mailing Address**
Artisan and Truckers Casualty Co
PO Box 94739
Cleveland, OH 44101

# Additional insured endorsement

**1-800-444-4487**
For customer service, 24 hours a day,
7 days a week

## Name of Person or Organization

IRON WOMAN CONSTRUCION


This endorsement modifies insurance provided under the commercial auto policy and any endorsements thereto affording liability coverage.

The person or organization named above is an **insured** with respect to such liability coverage as is afforded by the policy, but this insurance applies to said **insured** only as a person liable for the conduct of another **insured** and then only to the extent of that liability. **We** also agree with **you** that insurance provided by this endorsement will be primary for any power unit specifically described on the **Declarations Page** and showing liability coverage.

### Limit of Liability
| | |
|---|---|
| **Bodily Injury** | Not applicable |
| **Property Damage** | Not applicable |
| **Combined Liability** | $1,000,000 each **accident** |

### All other terms, limits and provisions of this policy remain unchanged.

This endorsement applies to Policy Number: 952248958
Issued to (Name of Insured): LUCY 22 INC
LUCKY 22 INC

Effective date of endorsement: September 10, 2021    Policy expiration date: September 10, 2022

Form 1198 (07/16)

Policy number: 952248958
LUCY 22 INC
Page 1 of 1

## Named Driver Exclusion Endorsement

If **you** have agreed to exclude any person, as listed on the **declarations page,** from coverage under this policy, then **we** will not provide coverage for any claim arising from an **accident** or **loss** involving a motorized vehicle being operated by that excluded driver. This includes any claim for damages made against any named insured, any person insured under the policy, or any other person or organization that is vicariously liable for an **accident** arising out of the operation of a motorized vehicle by the excluded driver.

**All other terms, limits and provisions of this policy remain unchanged.**

Form 1303 (11/07)

PGI/MEDINA
81 W 84TH AVE 160
THORNTON, CO 80260

**PROGRESSIVE**®
COMMERCIAL

**Policy number:  952248958**

Underwritten by:
Artisan and Truckers Casualty Co
Insured:
LUCY 22 INC
September 13, 2021
Policy Period: Sep 10, 2021 - Sep 10, 2022

LUCY 22 INC
LUCKY 22 INC
████████████████

**Mailing Address**

Artisan and Truckers Casualty Co
PO Box 94739
Cleveland, OH 44101

**1-800-444-4487**

For customer service, 24 hours a day,
7 days a week

# Waiver of Subrogation Endorsement

This endorsement modifies insurance provided under the following:

Commercial Auto Policy
Motor Truck Cargo Liability Coverage Endorsement
Commercial General Liability Coverage Endorsement

We agree to waive any and all subrogation claims against the person or organization designated below.

**Name of Person or Organization:**

IRON WOMAN CONSTRUCTION

████████████████████

This endorsement applies to policy number: 952248958
Issued to: LUCY 22 INC

LUCKY 22 INC

Endorsement effective: September 10, 2021 Expiration: September 10, 2022

**All other terms, limits and provisions of this policy remain unchanged.**

Form 8610 (02/19)

PGI/MEDINA
81 W 84TH AVE 160
THORNTON, CO 80260

**PROGRESSIVE**®
COMMERCIAL

**Policy number:  952248958**
Underwritten by:
Artisan and Truckers Casualty Co
Insured:
LUCY 22 INC
September 13, 2021
Policy Period: Sep 10, 2021 - Sep 10, 2022

IRON WOMAN CONSTRUCTION
LUCKY 22 INC
███████████████████

**Mailing Address**
Artisan and Truckers Casualty Co
PO Box 94739
Cleveland, OH 44101

**1-800-444-4487**
For customer service, 24 hours a day,
7 days a week

# Waiver of Subrogation Endorsement

This endorsement modifies insurance provided under the following:

Commercial Auto Policy
Motor Truck Cargo Liability Coverage Endorsement
**Commercial General Liability Coverage Endorsement**
We agree to waive any and all subrogation claims against the person or organization designated below.

**Name of Person or Organization:**
    IRON WOMAN CONSTRUCTION
        ████████████████

This endorsement applies to policy number: 952248958
Issued to: LUCY 22 INC
        LUCKY 22 INC

Endorsement effective: September 10, 2021 Expiration: September 10, 2022
**All other terms, limits and provisions of this policy remain unchanged.**

Form 8610 (02/19)



1781 CO 0219

# COLORADO
## COMMERCIAL AUTO FORMS

**PLEASE READ YOUR POLICY AGREEMENT CAREFULLY.**
Provisions of this Agreement and its endorsements restrict coverage. Be certain you understand all of the coverage terms, the exclusions, and your rights and duties.

**All forms in the endorsement section do not automatically pertain to your policy.**
Please refer to your declarations page for form numbers associated with your policy. Only those endorsements whose form numbers appear on your declarations page apply to your policy. All other parts of the policy that have not been modified by an endorsement will remain unchanged.

This booklet contains Form 6912 (02/19) and a section of optional endorsements.



Form 6912 (02/19)

# COMMERCIAL AUTO POLICY

## INDEX OF POLICY PROVISIONS

**PAGE**

**DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS** . . . . . . . . . . . . . . . . . . .1

**GENERAL DEFINITIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2

**PART I—LIABILITY TO OTHERS**
Insuring Agreement—Liability To Others . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
Additional Definitions Used in This Part Only . . . . . . . . . . . . . . . . . . . . . . . . .6
Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
Out-Of-State Coverage Extension . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13

**PART II—DAMAGE TO YOUR AUTO**
Insuring Agreement—Collision Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . .15
Insuring Agreement—Comprehensive Coverage . . . . . . . . . . . . . . . . . . . . . .15
Insuring Agreement—Fire and Theft with Combined
    Additional Coverage (CAC) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
Additional Coverage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16
Additional Payments . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17
Additional Definition Used in This Part Only . . . . . . . . . . . . . . . . . . . . . . . . .17
Exclusions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18
Limit of Liability . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .19
Deductible . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
Salvage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
No Benefit to Bailee . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
Appraisal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .22
Payment of Loss . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23
Loss Payee Agreement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

**GENERAL PROVISIONS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .23

## COMMERCIAL AUTO POLICY

If **you** pay **your** premium when due, **we** will provide the insurance described in this policy.

### DUTIES IN THE EVENT OF AN ACCIDENT OR LOSS

For coverage to apply under this policy, **you** or the person seeking coverage must promptly report each **accident** or **loss** even if **you** or the person seeking coverage is not at fault. Refer to your policy documents for the claims phone number.

**You** or the person seeking coverage must also obtain and provide **us** the names and addresses of all persons involved in the **accident** or **loss**, the names and addresses of any witnesses, and the license plate numbers of the vehicles involved.

If **you** or the person seeking coverage cannot identify the owner or operator of a vehicle involved in the **accident**, or if theft or vandalism has occurred, **you** or the person seeking coverage must notify the police within 24 hours or as soon as practicable. However, for purposes of uninsured motorist coverage when the owner or operator of a vehicle involved in the accident cannot be identified, **you** or the person seeking coverage must notify the police no more than 30 days after the accident.

A person seeking coverage must:
1. cooperate with **us** in any matter concerning a claim or lawsuit;
2. provide any written proof of **loss we** may reasonably require;
3. allow **us** to take signed and recorded statements, including sworn statements and examinations under oath, which **we** may conduct outside the presence of **you**, a **relative**, or any person claiming coverage, and answer all reasonable questions **we** may ask as often as **we** may reasonably require;
4. promptly call **us** to notify **us** about any claim or lawsuit and send **us** any and all legal papers relating to any claim or lawsuit;
5. attend hearings and trials as **we** require;
6. submit to medical examinations at **our** expense by doctors **we** select as often as **we** may reasonably require;
7. authorize **us** to obtain medical and other records;
8. take reasonable steps after a **loss** to protect the **insured auto** from further **loss**. **We** will pay reasonable expenses incurred in providing that protection. If failure to provide such protection results in further loss, any additional damages will not be covered under this policy;
9. allow **us** to have access to an **insured auto** or other **auto** involved in an **accident** or **loss** and to have it inspected and appraised before its repair or disposal; and
10. authorize **us** access to **your** business or personal records as often as **we** may reasonably require.

1

## GENERAL DEFINITIONS

**The words and phrases below, whether in the singular, plural or posses-
sive, have the following special meanings when appearing in boldface type
in this policy, and in endorsements issued in connection with this policy,
unless specifically modified.**

1. "**Accident**" means a sudden, unexpected and unintended event, or a con-
tinuous or repeated exposure to that event, that causes **bodily injury** or
**property damage**.

2. "**Auto**" means a land motor vehicle or **trailer** designed for travel on public
roads, or any other land vehicle that is subject to a compulsory or financial
responsibility law or other motor vehicle insurance law in the state or prov-
ince where it is licensed or principally garaged. It does not include **mobile
equipment**. Self-propelled vehicles with the following types of permanently
attached equipment are **autos**, not **mobile equipment**:
   a. equipment designed and used primarily for:
      (i) snow removal;
      (ii) road maintenance, but not construction or resurfacing;
      (iii) street cleaning;
   b. cherry pickers and similar devices mounted on automobile or truck chas-
sis and used to raise or lower workers; and
   c. air compressors, pumps, and generators, including spraying, welding,
building cleaning, geophysical exploration, lighting, and well-servicing
equipment.

3. "**Bodily injury**" means bodily harm, sickness, or disease, including death
that results from bodily harm, sickness, or disease.

4. "**Declarations**" or "**declarations page**" means the document prepared by
**us** listing **your** policy information, which may include the types of coverage
**you** have elected, the limit for each coverage, the cost for each coverage, the
specifically described **autos** covered by this policy, and the types of cover-
age for each specifically described **auto**.

5. "**Employee**" includes a **leased worker** and a statutory employee. **Employee**
does not include a **temporary worker**.

6. "**Insured auto**" or "**your insured auto**" means:
   a. Any **auto** specifically described on the **declarations page**; or
   b. An additional **auto** for Part I—Liability To Others and/or Part II—Damage
To Your Auto on the date **you** become the owner if:
      (i) **you** acquire the **auto** during the policy period shown on the **declara-
tions page**;

2

(ii)  **we** insure all **autos** owned by **you** that are used in **your** business;

(iii)  no other insurance policy provides coverage for that **auto**; and

(iv)  **you** tell **us** within 30 days after **you** acquire it that **you** want **us** to cover it for that coverage.

If **you** add any coverage, increase **your** limits, or make any other changes to this policy during the 30-day period after **you** acquire an additional **auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes for the additional **auto**. **We** may charge premium for the additional **auto** from the date **you** acquire the **auto**.

With respect to Part I—Liability To Others, if **we** provide coverage for an additionally acquired **auto** in accordance with this paragraph b., **we** will provide the same coverage for such additional **auto** as **we** provide for any **auto** shown on the **declarations page**.

With respect to Part II—Damage To Your Auto, if **we** provide coverage for an **auto you** acquire in addition to any **auto** specifically described on the **declarations page**, and the additional **auto** is:

(i)  a **private passenger auto**, **we** will provide the broadest coverage **we** provide for any **auto** shown on the **declarations page**; or

(ii)  any **auto** other than a **private passenger auto**, and **you** have purchased Physical Damage coverage for at least one **auto** other than a **private passenger auto**, **we** will provide the broadest coverage for which the newly acquired **auto** is eligible.

c.  Any replacement **auto** on the date **you** become the owner if:

(i)  **you** acquire the **auto** during the policy period shown on the **declarations page**;

(ii)  the **auto** that **you** acquire replaces one specifically described on the **declarations page** due to termination of **your** ownership of the replaced **auto** or due to mechanical breakdown of, deterioration of, or **loss** to the replaced **auto** that renders it permanently inoperable; and

(iii)  no other insurance policy provides coverage for that **auto**.

If **we** provide coverage for a replacement **auto**, **we** will provide the same coverage for the replacement **auto** as **we** provide for the replaced **auto**. **We** will provide that coverage for a period of 30 days after **you** become the owner of such replacement **auto**. **We** will not provide any coverage after this 30-day period unless within this period **you** ask **us** to insure the replacement **auto**. If **you** add any coverage, increase **your** limits, or make any other changes to **your** policy during this 30-day period, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage, increase **your** limits, or make such changes.

3

7. "**Insured contract**" means:
   a. A lease of premises;
   b. A sidetrack agreement;
   c. Any easement or license agreement, except in connection with construction or demolition operations on or within 50 feet of a railroad;
   d. An obligation, as required by ordinance, to indemnify a municipality, except in connection with work for a municipality;
   e. That part of any other contract or agreement pertaining to **your** business (including an indemnification of a municipality in connection with work performed for a municipality) under which **you** assume the tort liability that is vicariously imposed on another for **your** negligence or that of **your employees** or agents; or
   f. That part of any contract or agreement, entered into as part of **your** business, for the rental of an **insured auto**. However, such contract or agreement shall not be considered an **insured contract** to the extent that it obligates **you** or any of **your employees** to pay for **property damage** to any **auto** rented or leased to **you** or any of **your employees**.

An "**insured contract**" does not include that part of any contract or agreement:
   1. That indemnifies a railroad for **bodily injury** or **property damage** arising out of construction or demolition operations within 50 feet of any railroad property and affecting any railroad bridge or trestle, tracks, roadbeds, tunnel, underpass, or crossing; or
   2. That pertains to the loan, lease or rental of an **auto** to **you** or any of **your employees**, if the **auto** is loaned, leased or rented with a driver; or
   3. That holds a person or organization engaged in the business of transporting property by **auto** for hire harmless for **your** use of an **insured auto** over a route or territory that person or organization is authorized to serve by public authority.

8. "**Leased worker**" means a person leased to **you** by a labor leasing firm under an agreement between **you** and the labor leasing firm to perform duties related to the conduct of **your** business. **Leased worker** does not include a **temporary worker**.

9. "**Loss**" means sudden, direct and accidental loss or damage.

10. "**Mobile equipment**" means any of the following types of land vehicles, including, but not limited to, any attached machinery or equipment:
   a. Bulldozers, farm implements and machinery, forklifts, and other vehicles designed for use principally off public roads;
   b. Vehicles **you** use solely on premises **you** own or rent and on accesses to public roads from these premises, unless specifically described on the **declarations page** and not defined as **mobile equipment** under other parts of this definition;

4

   c.  Any vehicle that travels on crawler treads, or that does not require licensing in the state in which **you** reside or **your** business is licensed;

   d.  Vehicles, whether self-propelled or not, used primarily to provide mobility to permanently attached:

     (i)  Power cranes, shovels, loaders, diggers, or drills; or

     (ii)  Road construction or resurfacing equipment, such as graders, scrapers or rollers.

   e.  Vehicles not described in Paragraphs a., b., c., or d. above that are not self-propelled and are used primarily to provide mobility to permanently attached equipment of the following types:

     (i)  Air compressors, pumps, and generators, including spraying, welding, building cleaning, geophysical exploration, lighting, and well-servicing equipment; or

     (ii)  Cherry pickers and similar devices used to raise or lower workers.

   f.  Vehicles not described in Paragraphs a., b., c., or d. above that are self-propelled and used primarily for purposes other than transportation of persons or cargo.

However, **mobile equipment** does not include land vehicles that are subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

11.  "**Occupying**" means in, on, entering or exiting.

12.  "**Personal vehicle sharing program**" means a system or process, operated by a business, organization, network, group, or individual, that facilitates the sharing of **private passenger autos** for use by individuals, businesses, or other entities.

13.  "**Pollutants**" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

14.  "**Private passenger auto**" means a land motor vehicle:

   a.  of the private passenger, pickup body, or cargo van type;

   b.  designed for operation principally upon public roads;

   c.  with at least four wheels; and

   d.  with a gross vehicle weight rating of 12,000 pounds or less, according to the manufacturer's specifications.

However, **private passenger auto** does not include step-vans, parcel delivery vans, or cargo cutaway vans or other vans with cabs separate from the cargo area.

15.  "**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

16.  "**Relative**" means any person residing in the household in which the named insured resides who is related to the named insured by blood, marriage, or

adoption, including a ward or foster child. This term only applies if the named insured is a natural person.

17. "**Temporary substitute auto**" means any **auto you** do not own while used with the permission of its owner as a temporary substitute for an **insured auto** that has been withdrawn from normal use due to breakdown, repair, servicing, loss or destruction. However, **temporary substitute auto** does not include any **auto** available for the regular or frequent use of **you**, a **relative**, or **your employees** unless that **auto** is insured under a separate policy of insurance that provides at least the minimum required limits of financial responsibility under the applicable state and federal laws.

18. "**Temporary worker**" means:
    a. a person who is furnished to **you** to substitute for a permanent **employee** on leave or to meet seasonal or short-term workload conditions; or
    b. a day laborer.

19. "**Trailer**" includes a semi-trailer and any piece of equipment used to convert a semi-trailer to a full trailer while it is attached to the semi-trailer.

20. "**We**", "**us**" and "**our**" mean the company providing this insurance as shown on the **declarations page**.

21. "**You**", "**your**" and "**yours**" refer to the named insured shown on the **declarations page**.

### PART I—LIABILITY TO OTHERS

## INSURING AGREEMENT—LIABILITY TO OTHERS

Subject to the Limits of Liability, if **you** pay the premium for liability coverage for the **insured auto** involved, **we** will pay damages, other than punitive or exemplary damages, for **bodily injury**, **property damage**, and **covered pollution cost or expense** for which an **insured** becomes legally responsible because of an **accident** arising out of the ownership, maintenance or use of that **insured auto**. However, **we** will only pay for the **covered pollution cost or expense** if the same **accident** also caused **bodily injury** or **property damage** to which this insurance applies.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this Part I. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

## ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

A. When used in Part I—Liability To Others, **insured** means:
    1. **You** with respect to an **insured auto**.

6

2. Any person while using, with **your** permission, and within the scope of that permission, an **insured auto you** own, hire, or borrow except:

    (a) Any person while he or she is working in a business of selling, leasing, repairing, parking, storing, servicing, delivering or testing **autos**, unless that business is **yours** and it was so represented in **your** application.

    (b) Any person while he or she is moving property to or from an **insured auto**, other than one of **your employees**, partners (if you are a partnership), members (if you are a limited liability company), or officers or directors (if you are a corporation).

    (c) The owner or anyone else from whom the **insured auto** is leased, hired, or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

    (d) The employees or agents of an owner or anyone else from whom the **insured auto** is leased, hired or borrowed. However, this exception does not apply if the **insured auto** is specifically described on the **declarations page**.

For purposes of this subsection A.2., an **insured auto you** own includes any **auto** specifically described on the **declarations page**.

3. Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I—Liability To Others. If **we** make a filing or submit a certificate of insurance on **your** behalf with a regulatory or governmental agency, the term "**insured**" as used in such filing or certificate, and in any related endorsement, refers only to the person or organization named on such filing, certificate or endorsement.

B. When used in Part I—Liability To Others, **insured auto** also includes:

1. **Trailers** designed primarily for travel on public roads, while connected to **your insured auto** that is a power unit;

2. **Mobile equipment** while being carried or towed by an **insured auto**;

3. Any **temporary substitute auto**; and

4. **Mobile equipment** that is:

    a. owned by **you**;

    b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or

    c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

However, **mobile equipment** meeting any of those three criteria will qualify only if at the time of **loss** it is being:

    a. used in **your** business;

    b. operated on a public highway; and

    c. operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

C.  When used in Part I—Liability To Others, "**covered pollution cost or expense**" means any cost or expense arising out of:

1.  Any request, demand, order, or statutory or regulatory requirement; or
2.  Any claim or suit by or on behalf of a governmental authority demanding that the **insured** or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of, **pollutants**.

**Covered pollution cost or expense** does not include any cost or expense arising out of the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of **pollutants**:

a.  That are, or that are contained in any property that is:
    (i)  Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
    (ii)  Otherwise in the course of transit by or on behalf of the **insured**; or
    (iii)  Being stored, disposed of, treated, or processed in or upon the **insured auto**;
b.  Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or
c.  After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this definition does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic or mechanical functioning of the **insured auto** or its parts if:

(1)  The **pollutants** escape, seep, migrate, or are discharged, dispersed or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and
(2)  The **bodily injury**, **property damage** or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this definition do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

(1)  The **pollutants** or any property in which the **pollutants** are contained are upset, overturned or damaged as a result of the maintenance or use of an **insured auto**; and
(2)  The discharge, dispersal, release or escape of the **pollutants** is caused directly by such upset, overturn or damage.

**ADDITIONAL PAYMENTS**

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

1.  all expenses that **we** incur in the settlement of any claim or defense of any lawsuit;

2.  interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest which accrues after the date of **our** payment, written offer, or deposit;

3.  the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

4.  up to $2,000 for cost of bail bonds required because of an **accident we** cover. **We** have no duty to apply for or furnish these bonds;

5.  reasonable expenses incurred by an **insured** at **our** request, including loss of earnings up to $250 a day; and

6.  all court costs taxed against the **insured** in any "suit" against the **insured** we defend. However, these payments do not include attorneys' fees or attorneys' expenses taxed against the **insured**.

**OUT-OF-STATE COVERAGE EXTENSION**

If an **accident** to which this Part I applies occurs in any state, territory, or possession of the United States of America, Puerto Rico, or any province or territory of Canada, other than the state in which an **insured auto** is principally garaged, and the state, province, territory or possession has:

1.  a financial responsibility or similar law requiring limits of liability for **bodily injury** or **property damage** higher than the limits shown on the **declarations page**, this policy will provide the higher limit; or

2.  a compulsory insurance or similar law requiring a non-resident to maintain insurance whenever the non-resident uses an **auto** in that state, province, territory or possession, this policy will provide the greater of:
    a.  the required minimum amounts and types of coverage; or
    b.  the Limits of Liability under this policy.

This extension does not apply to the limit or limits specified by any law governing commercial carriers of passengers or property.

9

**We** will not pay anyone more than once for the same elements of **loss** because of this extension.

**EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART I—LIABILITY TO OTHERS.**

Coverage under this Part I, including **our** duty to defend, does not apply to:

1. **Expected or Intended Injury**
   **Bodily injury** or **property damage** either expected by or caused intentionally by or at the direction of any **insured**.

2. **Contractual**
   Any liability assumed by an **insured** under any contract or agreement, unless the agreement is an **insured contract** that was executed prior to the occurrence of any **bodily injury** or **property damage**.

   However, this exclusion does not apply to liability for damages that an **insured** would have in the absence of the contract or agreement.

3. **Worker's Compensation**
   Any obligation for which an **insured** or an insurer of that **insured**, even if one does not exist, may be held liable under workers' compensation, unemployment compensation, disability benefits law, or any similar law.

4. **Nuclear Energy Liability**
   An **accident** for which any person is insured under nuclear energy liability insurance. This exclusion applies even if the limits of that insurance are exhausted.

5. **Employee Indemnification and Employer's Liability**
   **Bodily injury** to:
   a. An **employee** of any **insured** arising out of or within the course of:
      (i) That **employee's** employment by any **insured**; or
      (ii) Performing duties related to the conduct of any **insured's** business; or
   b. The spouse, child, parent, brother or sister of that **employee** as a consequence of Paragraph a. above.

   This exclusion applies:
   a. Whether the **insured** may be liable as an employer or in any other capacity; and
   b. To any obligation to share damages with or repay someone else who must pay damages because of the injury.

10

But this exclusion does not apply to **bodily injury** to a domestic **employee** if benefits are neither paid nor required to be provided under any workers' compensation, disability benefits, or similar law, or to liability for **bodily injury** assumed by the **insured** under an **insured contract**. For the purposes of this policy, a domestic **employee** is a person engaged in household or domestic work performed principally in connection with a residence premises.

6.  **Fellow Employee**
    **Bodily injury** to:
    a.  a fellow **employee** of an **insured** injured while within the course of their employment or while performing duties related to the conduct of **your** business.
    b.  the spouse, child, parent, brother, or sister of that fellow **employee** as a consequence of Paragraph a. above.

7.  **Care, Custody or Control**
    **Property damage** to, towing or removal expense for, or **covered pollution cost or expense** involving, any property owned by, rented to, being transported by, used by, or in the care, custody or control of any **insured**, including any motor vehicle operated or being towed. But this exclusion does not apply to liability assumed under a sidetrack agreement.

8.  **Movement of Property by Mechanical Device**
    **Bodily injury** or **property damage** resulting from or caused by the movement of property by a mechanical device, other than a hand truck, not attached to an **insured auto**.

9.  **Handling of Property**
    **Bodily injury** or **property damage** resulting from or caused by the handling of property:
    a.  before it is moved from the place where it is accepted by the **insured** for movement into or onto **your insured auto**; or
    b.  after it has been moved from **your insured auto** to the place where it is finally delivered by the **insured**.

10. **Pollution**
    **Bodily injury** or **property damage** resulting from or caused by the actual, alleged, or threatened discharge, dispersal, seepage, migration, release, or escape of any **pollutants**:
    a.  That are, or that are contained in any property that is:
        (i)   Being transported or towed by, handled, or handled for movement into, onto, or from, the **insured auto**;
        (ii)  Otherwise in the course of transit by or on behalf of the **insured**; or
        (iii) Being stored, disposed of, treated, or processed in or upon the **insured auto**;

b. Before the **pollutants** or any property in which the **pollutants** are contained are moved from the place where they are accepted by the **insured** for movement into or onto the **insured auto**; or

c. After the **pollutants** or any property in which the **pollutants** are contained are moved from the **insured auto** to the place where they are finally delivered, disposed of, or abandoned by the **insured**.

The above Paragraph a. of this exclusion does not apply to fuels, lubricants, fluids, exhaust gasses, or other similar **pollutants** that are needed for or result from the normal electrical, hydraulic, or mechanical functioning of the **insured auto** or its parts if:

(1) The **pollutants** escape, seep, migrate, or are discharged, dispersed, or released directly from an **insured auto** part designed by its manufacturer to hold, store, receive, or dispose of such **pollutants** and is a part that would be required for the customary operation of the **insured auto**; and

(2) The **bodily injury**, **property damage**, or **covered pollution cost or expense** does not arise out of the operation of any equipment listed in Paragraphs b. and c. of the definition of **auto**.

The above Paragraphs b. and c. of this exclusion do not apply to **accidents** that occur away from premises owned by or rented to an **insured** with respect to **pollutants** not in or upon an **insured auto** if:

(1) The **pollutants** or any property in which the **pollutants** are contained are upset, overturned, or damaged as a result of the maintenance or use of an **insured auto**; and

(2) The discharge, dispersal, seepage, migration, release, or escape of the **pollutants** is caused directly by such upset, overturn, or damage.

11. **Racing**
**Bodily injury** or **property damage** arising out of **you** or an **insured** participating in, or preparing for, a prearranged or organized racing, speed or demolition contest, stunting activity, or performance contest.

12. **War**
**Bodily injury** or **property damage** arising directly or indirectly out of:

a. War, including undeclared or civil war;

b. Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or other agents; or

c. Insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.

13. **Operations**
**Bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of the operation of:

a. any equipment listed in Paragraphs b. and c. of the definition of **auto**; or

b.   machinery or equipment that is on, attached to, or part of, a land vehicle
that meets the definition of **mobile equipment**.

14.  **Completed Operations**
**Bodily injury** or **property damage** arising out of, or caused by, **your** work
after that work has been completed or abandoned.

For purposes of this exclusion, **your** work means:
a.   Work or operations performed by **you** or on **your** behalf;
b.   Materials, parts, or equipment furnished in connection with such work or
operations; and
c.   The delivery of liquids.

**Your** work includes warranties or representations made at any time with
respect to the fitness, quality, durability, or performance of any of the items
included in Paragraphs a., b., or c. above.

**Your** work will be deemed completed at the earliest of the following times:
a.   When all of the work called for in **your** contract has been completed.
b.   When all of the work to be done at a particular site has been completed
if **your** contract calls for work at more than one site.
c.   When that part of the work done at a job site has been put to its intended
use by any person or organization other than another contractor or sub-
contractor working on the same project.
Work that may need service, maintenance, correction, repair, or replace-
ment, but which is otherwise complete, will be treated as completed.

15.  **Criminal Acts**
**Bodily injury** or **property damage** caused by, or reasonably expected to
result from, a criminal act or omission of an **insured**. This exclusion applies
regardless of whether that **insured** is actually charged with, or convicted of,
a crime. For purposes of this exclusion, criminal acts or omissions do not
include traffic violations.

16.  **Vehicle Sharing—Private Passenger Autos**
**Bodily injury** or **property damage** arising out of the use of an **insured
auto** that is a **private passenger auto** while being used in connection with
a **personal vehicle sharing program**. This exclusion does not apply to the
operation of an **insured auto** by **you**.

**LIMIT OF LIABILITY**

**We** will pay no more than the Limit of Liability shown on the **declarations page**
for this coverage for the **insured auto** involved in the **accident** regardless of:
1.   the number of premiums paid;
2.   the number of **insured autos** or trailers shown on the **declarations page**;

3. the number of policies issued by **us**;

4. the number of vehicles or **insureds** involved in an **accident**; or

5. the number of claims or lawsuits arising out of an **accident**;

subject to the following:

1. **Coverage Required by Filings**

    If **we** have filed a certificate of insurance on **your** behalf with any regulatory or governmental agency, and:

    (i)   **we** are required to pay any judgment entered against **you**; or

    (ii)  **we** agree to settle a claim or lawsuit;

    for **bodily injury**, **property damage**, or **covered pollution cost or expense** arising out of an **accident** or **loss** otherwise not covered under the terms of this policy solely because of such certificate of insurance, **we** will be obligated to pay no more than the minimum amount required by that agency or applicable law. If any payment is based solely on such certificate, **you** must reimburse **us** in full for **our** payment, including legal fees and costs **we** incurred, whether the payment is made as a result of judgment or settlement.

2. **Combined Bodily Injury and Property Damage Limits**

    Subject to the terms of Section 1 above, if **your declarations page** indicates that combined **bodily injury** and **property damage** limits apply for "each accident" or "combined single limit" applies, the most **we** will pay for the aggregate of all damages and **covered pollution cost or expense** combined, resulting from any one **accident**, is the combined liability insurance limit shown on the **declarations page** for the **insured auto** involved in the **accident**.

3. **Separate Bodily Injury Liability and Property Damage Liability Limits**

    Subject to the terms of Section 1 above, if **your declarations page** indicates that separate **bodily injury** liability and **property damage** liability limits apply:

    a. The "each person" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for **bodily injury** sustained by any one person in any one **accident**, and that "each person" maximum limit will apply to the aggregate of claims made for such **bodily injury** and any and all claims derived from such **bodily injury**, including, but not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

    b. Subject to the **bodily injury** liability limit for "each person," the "each accident" **bodily injury** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for

14

**bodily injury** sustained by two or more persons in any one **accident**, including all derivative claims which include, but are not limited to, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

c.  The "each accident" **property damage** liability limit listed on the **declarations page** for the **insured auto** involved in the **accident** is the maximum **we** will pay for the aggregate of all **property damage** and **covered pollution cost or expense** combined, sustained in any one **accident**.

For the purpose of determining **our** Limit of Liability under Sections 1., 2., and 3. above, all **bodily injury**, **property damage**, and **covered pollution cost or expense**, resulting from continuous or repeated exposure to substantially the same event, shall be considered as resulting from one **accident**.

An **insured auto** and any **trailer** or **trailers** attached thereto shall be deemed to be one **auto** with respect to **our** Limit of Liability.

When coverage is afforded for an **accident** involving an **insured auto** that, at the time of loss:

a.  is a **trailer** specifically described on the **declarations page**; and
b.  is attached to any power unit that is not an **insured auto** specifically described on the **declarations page**;

the maximum amount we will pay will be limited to the lesser of an amount not to exceed the applicable compulsory or financial responsibility law limits of the state identified in **your** address as shown on the **declarations page** or the Limit of Liability shown on the **declarations page**.

Any amount payable under Part I—Liability To Others to or for an injured person will be reduced by any payment made to that person under any Uninsured Motorist Coverage, Underinsured Motorist Coverage, Personal Injury Protection Coverage, or Medical Payments Coverage provided by this policy.

## PART II—DAMAGE TO YOUR AUTO

### INSURING AGREEMENT—COLLISION COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Collision Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** when it collides with another object or overturns.

### INSURING AGREEMENT—COMPREHENSIVE COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Comprehensive Coverage, **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** from any cause other than those covered under Collision Coverage.

Any **loss** caused by missiles, falling objects, fire, theft, collision with an animal, or accidental glass breakage shall be deemed a Comprehensive **loss**. However, **you** have the option of having glass breakage caused by a covered **auto's** collision or overturn considered a **loss** under Collision Coverage.

## INSURING AGREEMENT—FIRE AND THEFT WITH COMBINED ADDITIONAL COVERAGE (CAC)

Subject to the Limits of Liability, if **you** pay the premium for Fire and Theft with Combined Additional Coverage (CAC), **we** will pay for **loss** to **your insured auto** and its **permanently attached equipment** caused by:

1. fire, lightning or explosion;
2. theft;
3. windstorm or hail;
4. earthquake;
5. flood or rising water;
6. malicious mischief or vandalism;
7. the stranding, sinking, burning, collision, or derailment of any conveyance in or upon which **your insured auto** is being transported; or
8. collision with a bird or animal.

No **losses** other than those specifically described above will be covered under Part II of this policy.

## ADDITIONAL COVERAGE

1. **Transportation Expenses**

   **We** will pay up to $30 per day, up to a maximum of $900, for temporary transportation expenses incurred by **you** because of the theft of an **insured auto** that is a **private passenger auto**. This coverage applies only to those **insured autos** for which **you** carry Comprehensive Coverage. **We** will pay for temporary transportation expenses incurred during the period beginning 48 hours after **you** report the theft to **us**, and ending when the **insured auto** is returned to use, or **we** pay for its **loss**.

2. **Coverage for Temporary Substitute Autos**

   If a **temporary substitute auto** is involved in a **loss**, **we** will provide the same coverage and deductible that would have applied to the **insured auto** for which it is a substitute. The most **we** will pay for **loss** to a **temporary substitute auto** is the lesser of the Actual Cash Value at the time of **loss** or the cost of repairing or replacing the damaged or stolen property with like kind and quality, less the applicable deductible.

3.  **Pet Injury Coverage**

If **you** have purchased Collision Coverage for at least one **insured auto** listed on the **declarations page**, Pet Injury Coverage is included in **your** policy.

**Insuring Agreement**

If a **pet** sustains injury or death while inside an **insured auto** at the time of a **loss** covered under Collision, Comprehensive, or Fire & Theft with Combined Additional Coverage, **we** will pay:

1.  for reasonable and customary veterinary fees incurred by **you** or the owner of the **pet** if the **pet** is injured in, or as a direct result of, the covered **loss**; or
2.  a death benefit if the **pet** dies in, or as a direct result of, the covered **loss**.

In the event of a covered **loss** due to the theft of an **insured auto**, **we** will provide the death benefit provided the **pet** is not recovered.

**Limits of Liability**

The following additional Limits of Liability apply to Pet Injury Coverage:

1.  The most **we** will pay for all damages in any one **loss** is a total of $1,000 regardless of the number of **pets** involved.
2.  If the **pet** dies in, or as a direct result of, a covered **loss**, **we** will provide a death benefit of $1,000, less any payment **we** made toward veterinary expenses for the **pet**.
3.  No deductible shall apply to this coverage.

## ADDITIONAL PAYMENTS

If **you** have paid the premium for Comprehensive Coverage, Collision Coverage, or Fire and Theft with Combined Additional Coverage, then in addition to **our** Limit of Liability, **we** will pay:

1.  All reasonable expenses necessary to return a stolen **insured auto** to **you**, unless **we** determine the **auto** to be a total loss.
2.  All reasonable expenses necessary to remove an **insured auto** from the site of an **accident** or **loss** and transport it to a repair facility.

## ADDITIONAL DEFINITIONS USED IN THIS PART ONLY

When used in Part II—Damage To Your Auto:

1.  "**Finance agreement**" means a written lease or loan contract, entered into as a part of **your** business, pertaining to the lease or purchase by **you** of an

**insured auto**, and subject to a valid promissory note or written payment obligation contained in a lease, and security agreement or other written agreement establishing a security interest, executed concurrently with a purchase or lease of the **insured auto** that is commensurate with fair market value.

2. "**Permanently attached equipment**" or **PAE** means equipment and devices that are permanently installed or attached to **your insured auto**. **Permanently attached equipment** also includes:
   a. accessories designed to work as part of the equipment or devices;
   b. load securing equipment and devices; and
   c. custom paint or decals.

3. "**Pet**" means a dog or cat occupying an **insured auto** with **your** express or implied consent.

**<u>EXCLUSIONS</u>—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE FOR AN ACCIDENT OR LOSS WILL NOT BE AFFORDED UNDER THIS PART II—DAMAGE TO YOUR AUTO.**

1. **We** will not pay for loss caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
   a. **War or Military Action**
      (1) war, including undeclared or civil war;
      (2) warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign or other authority using military personnel or agents;
      (3) insurrection, rebellion, revolution, usurped power, or action taken by governmental authority in hindering or defending against any of these.
   b. **Nuclear Hazard**
      (1) the explosion of any weapon employing atomic fission or fusion; or
      (2) nuclear reaction or radiation, or radioactive contamination, however caused.

2. **We** will not pay for **loss** to any sound equipment, video equipment, or transmitting equipment not permanently installed in **your insured auto**, or to tapes, records, compact discs, DVDs, or similar items used with sound or video equipment.

3. **We** will not pay for **loss** to radar detectors or to any other equipment or device designed or used to detect speed measuring equipment, or to any equipment designed or used to jam or disrupt any speed measuring equipment.

4. **We** will not pay for **loss** due and confined to:
   a. wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion.

b. blowouts, punctures, flat spots, or other road damage to tires.

But, coverage does apply if the damage is the result of other **loss** covered by the policy.

5. **We** will not pay for **loss** incurred while **your insured auto** is used in any illicit trade or transportation, or due to **your insured auto's** destruction or confiscation by governmental or civil authorities because **you**, or, if **you** are a natural person, any **relative**, engaged in illegal activities.

6. **We** will not pay for **loss** caused by **you** or an insured participating in or preparing for a prearranged or organized racing, speed or demolition contest, stunting activity or performance contest.

7. **We** will not pay for **loss** to an **insured auto** for diminution of value.

8. If **we** pay **your** financial obligation under a **finance agreement**, **we** will not pay:

    a. Overdue **finance agreement** payments including any type of late fees or penalties;

    b. Financial penalties imposed under a **finance agreement** for excessive use, abnormal wear and tear, or high mileage;

    c. Security deposits not normally refunded by the lessor or lender;

    d. Cost of **finance agreement** related products such as, but not limited to, Credit Life Insurance, Health, Accident or Disability insurance purchased by **you**;

    e. Carryover balances from previous **finance agreements** or other amounts not associated with the **insured auto**; or

    f. Unpaid principal included in the outstanding **finance agreement** balance that was not used by **you** to purchase the **insured auto**.

9. **We** will not pay for **loss** to an **insured auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you**.

**LIMIT OF LIABILITY**

1. If the **declarations page** shows actual cash value for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:

    a. the actual cash value of the stolen or damaged property at the time of **loss**;

    b. the amount necessary to replace the stolen or damaged property with other of like kind and quality; or

    c. the amount necessary to repair the damaged property to its pre-loss physical condition; however, if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, or the cost to replace, rather than repair, the **insured auto**.

**Permanently attached equipment** (**PAE**) is covered to the limit shown on the **declarations page**. This limit includes transfer of undamaged **PAE** to another **insured auto**, but will not increase the **PAE** limit shown on the **declarations page**.

2.  If the **declarations page** shows Stated Amount for the **insured auto**, then the most **we** will pay for **loss** to **your insured auto** is the least of:

    a.  the actual cash value of the stolen or damaged property at the time of **loss**;

    b.  the amount necessary to replace the stolen or damaged property with other of like kind and quality;

    c.  the amount necessary to repair the damaged property to its pre-loss physical condition; however, if **we** determine that the **insured auto** is a total loss, **we** may, at **our** option, pay the lesser of the actual cash value, Stated Amount, or the cost to replace, rather than repair, the **insured auto**; or

    d.  the applicable Stated Amount of the property as shown on the **declarations page**.

    However, if there is a **finance agreement** in place for the **insured auto**, the most **we** will pay for a total loss where the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss** is:

    a.  greater than the actual cash value of the **insured auto** at the time of **loss**; and

    b.  the Stated Amount shown on the **declarations page** is greater than the actual cash value of the **insured auto** at the time of **loss**;

    is the lesser of:

    a.  the applicable Stated Amount of the **insured auto** as shown on the **declarations page**; or

    b.  the outstanding financial obligation under a **finance agreement** for the **insured auto** at the time of the **loss**.

    **PAE** is included in the value of the **insured auto**, but only to the extent the value of the equipment has been included in the Stated Amount shown on the **declarations page**. The transfer of undamaged **PAE** to another **insured auto** will be covered if the aggregate of all damage and cost to move is within the Stated Amount shown on the **declarations page**.

3.  Payments for **loss** covered under Collision Coverage, Comprehensive Coverage, or Fire and Theft with Combined Additional Coverage are subject to the following provisions:

    a.  in determining the amount necessary to repair damaged property to its pre-loss physical condition, the amount to be paid by **us**:

        (i)  shall not exceed the prevailing competitive labor rates charged in the area where the property is to be repaired, and the cost of repair or

20

        replacement parts and equipment, as reasonably determined by **us**; and

    (ii)  will be based on the cost of repair or replacement parts and equipment which may be new, reconditioned, remanufactured, or used, including, but not limited to:

        (a)  original manufacturer parts or equipment; and

        (b)  non-original manufacturer parts or equipment;

b.  the actual cash value is determined by the market value, age and condition of the **auto** at the time the **loss** occurs; and

c.  duplicate recovery for the same elements of damages is not permitted.

4.  To determine the amount necessary to repair the damaged property to its pre-loss physical condition as referred to in Paragraph 1.c., the total cost of necessary repairs will be reduced by:

a.  the cost of labor, parts and materials necessary to repair or replace damage, deterioration, defects, or wear and tear on exterior body parts, windshields and other glass, wheels, and paint, that existed prior to the **accident** and that is eliminated as a result of the repair or replacement of property damaged in the **loss**. This adjustment for physical condition includes, but is not limited to, broken, cracked or missing parts, rust, dents, scrapes, gouges, and peeling paint;

b.  an amount for depreciation (also referred to as betterment) that represents a portion of the cost of mechanical parts (parts that wear out over time and have a useful life typically shorter than the life of the **auto** as a whole) that are installed as replacements for existing mechanical parts that were defective, inoperable or nonfunctional prior to the **accident**, which **we** deem necessary to replace in the course of repair; and

c.  an amount for depreciation (also referred to as betterment) on high-wear parts that have a measurable life, such as tires, batteries, engine or transmission, determined by the proportional increase in the useful life of the replacement part when compared to the replaced part. For example, if **we** replace a 24-month old battery that had a manufacturer's rated life of 60 months with a new 60-month rated battery, **our** payment for the battery is reduced by 40 percent and **you** are responsible to pay that 40 percent portion of the cost of the battery.

**DEDUCTIBLE**

For each **loss** that qualifies for coverage under Comprehensive, Collision, or Fire and Theft with Combined Additional Coverage, the deductible shown on the **declarations page** for the **insured auto** will be applied. A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to this policy, only one deductible will apply to the entire **loss** event.

If **your insured auto** is an additional **auto** that **you** have requested to be added to **your** policy within 30 days of **your** acquisition of the **auto**, and no deductible has been designated for the additional **auto** prior to the **loss**, then:

1. when the **insured auto** is a **private passenger auto**, **we** will apply the lowest deductible listed for any one **auto** listed on the **declarations page**; or

2. when the **insured auto** is an **auto** other than a **private passenger auto**, **we** will apply the highest deductible listed for any one **auto** listed on the **declarations page**.

No deductible will apply to a **loss** to window glass when the glass is repaired instead of replaced.

No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **insured auto** to **you**.

**SALVAGE**

If **we** pay the actual cash value of **your insured auto** less the deductible, or if **we** pay the amount necessary to replace **your insured auto** less the deductible, **we** are entitled to all salvage. If **your insured auto** is a total loss and **we** pay the applicable Limit of Liability or Stated Amount as shown on the **declarations page** less the deductible, **we** are entitled to the same percent of salvage as **our** payment bears to the actual cash value of **your insured auto**.

**NO BENEFIT TO BAILEE**

No bailee or carrier shall benefit, directly or indirectly, from this Part II—Damage To Your Auto.

**APPRAISAL**

If **we** cannot agree with **you** on the amount of **your loss**, then **you** or **we** may demand an appraisal of the **loss**. Each party shall appoint a competent and disinterested appraiser. If the appraisers agree on the amount of the **loss**, they shall submit a written report to **us** and this shall be deemed to be the amount of the **loss**.

If the appraisers cannot agree on the amount of the **loss** within a reasonable time, they shall then choose a competent, impartial umpire, provided that if they cannot agree on an umpire within 15 days, either **you** or **we** may petition a judge of a court having jurisdiction to choose an umpire. The disagreement of the appraisers shall then be submitted to the umpire. Subject to the provisions of the policy, a written agreement signed by both appraisers or by one appraiser and the umpire will be the amount of the **loss**.

**You** must pay **your** fees and expenses and those of **your** appraiser. **We** will pay **our** fees and expenses and those of **our** appraiser. All other expenses of the

appraisal, including payment of the umpire if one is necessary, will be shared equally by **you** and **us**.

By agreeing to an appraisal, **we** do not waive any of **our** rights under any other part of this policy, including **our** right to deny the claim.

## PAYMENT OF LOSS

At **our** option, **we** may pay the **loss** in money, or repair or replace the damaged or stolen property. **We** may, at any time before the **loss** is paid or the property is replaced, return, at **our** expense, any stolen property either to **you** or to the address shown on the **declarations page**, with payment for the resulting damage less any applicable deductibles. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

**We** may make payment for a **loss** either to **you** or the owner of the property. Payment for a **loss** is required only if **you** have fully complied with the terms of this policy.

**You** must convey title to and possession of the damaged, destroyed, or stolen property to **us** if **we** pay the actual cash value of **your insured auto** less the deductible or if **we** pay the amount necessary to replace **your insured auto** less the deductible.

## LOSS PAYEE AGREEMENT

**We** will pay the Loss Payee named in the policy for **loss** to **your insured auto**, as the interest of the Loss Payee may appear.

This insurance covers the interest of the Loss Payee unless:
1. the **loss** results from fraudulent acts or omissions on **your** part; or
2. the **loss** is otherwise not covered under the terms of this policy.
Cancellation, nonrenewal, termination, or voiding ends this agreement as to the Loss Payee's interest.

If **we** make any payment to the Loss Payee, **we** will obtain the Loss Payee's rights against any other party.

## <u>GENERAL PROVISIONS</u>

1. **Policy Period and Territory**

   This policy applies only to **accidents** and **losses** occurring during the policy period shown on the **declarations page** and that occur within a state, territory, or possession of the United States of America, or a province or territory of Canada, or while an **insured auto** is being transported between their ports.

2.  **Policy Changes**

This policy, **your** insurance application (which is made a part of this policy as if attached hereto), the **declarations page**, as amended, and endorsements to this policy issued by **us** contain all the agreements between **you** and **us**. Subject to the following, its terms may not be changed or waived except by an endorsement issued by **us**.

The premium for this policy is based on information **we** have received from **you** or other sources. **You** agree to cooperate with **us** in determining if this information is correct and complete, and **you** will notify **us** if it changes during the policy period. If this information is incorrect, incomplete, or changes during the policy period, **you** agree that **we** may adjust **your** premium during the policy period, or take other appropriate action.

Changes that may result in a premium adjustment include, but are not limited to, changes in:

a.  the number, type, or use classification of **insured autos**;
b.  operators using **insured autos**, their ages, driving histories, license status, state or country of license issuance, or marital status;
c.  the place of principal garaging of any **insured auto**;
d.  coverage, deductibles, or limits of liability; or
e.  rating territory or discount eligibility.

If **you** ask **us** to delete a vehicle from this policy, no coverage will apply to that vehicle as of the date and time **you** ask **us** to delete it.

Nothing contained in this section will limit **our** right to void this policy for fraud, misrepresentation or concealment of any material fact by **you**, or anyone acting on **your** behalf.

3.  **Other Insurance**

a.  For any **insured auto** that is specifically described on the **declarations page**, this policy provides primary coverage. For an **insured auto** which is not specifically described on the **declarations page**, coverage under this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent. However, if the **insured auto** that is specifically described on the **declarations page** is a **trailer**, this policy will be excess over any and all other valid and collectible insurance, whether primary, excess or contingent, unless the **trailer** is attached to an **insured auto** that is a power unit **you** own and that is specifically described on the **declarations page**.

b.  If coverage under more than one policy applies on the same basis, either excess or primary, **we** will pay only **our** proportionate share. **Our** pro-

portionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

4. **Two or More Policies Issued By Us**

If any applicable insurance other than this policy is issued to **you** by **us**, or any company affiliated with **us**, and applies to the same **accident** or **loss**, the total amount payable among all such policies shall not exceed the limits provided by the single policy with the highest limits of liability.

5. **Legal Action Against Us**

**We** may not be sued unless there is full compliance with all the terms of this policy.

**We** may not be sued for payment under Part I—Liability To Others until the obligation of an insured under Part I to pay is finally determined either by judgment against that insured after actual trial or by written agreement of the insured, the claimant, and **us**. No one will have any right to make us a party to a lawsuit to determine the liability of an insured.

6. **Our Recovery Rights**

In the event of any payment under this policy, **we** are entitled to all the rights of recovery of the person or organization to whom payment was made. That person or organization must sign and deliver to **us** any legal papers relating to that recovery, do whatever else is necessary to help **us** exercise those rights, and do nothing after the **loss** or **accident** to harm **our** rights.

When a person has been paid damages by **us** under this policy and also recovers from another, the amount recovered from the other shall be held in trust for **us** and reimbursed to **us** to the extent of **our** payment, provided that the person to or on behalf of whom such payment is made is fully compensated for their **loss**.

In the event recovery has already been made from the responsible party, any rights to recovery by the person(s) claiming coverage under this policy no longer exist.

7. **Assignment**

Interest in this policy may not be assigned without **our** written consent. If the policyholder named on the **declarations page** is a natural person and that person dies, the policy will cover:

a.   any other named insured on the policy;

b. the legal representative of the deceased person while acting within the scope of duty of a legal representative; and

c. any person having proper custody of **your insured auto** until a legal representative is appointed, but in no event for more than 30 days after the date of death.

8. **Waiver**

Notice to any agent or knowledge possessed by any agent or other person shall not change or effect a waiver on any portion of this policy nor prevent **us** from exercising any of **our** rights under this policy.

9. **Bankruptcy**

**We** are not relieved of any obligation under this policy because of the bankruptcy or insolvency of an insured.

10. **Inspection and Audit**

**We** shall have the right to inspect **your** property and operations at any time. This includes, but is not limited to, the right to inspect and audit the maintenance of any **autos** covered hereunder, the identity of **your** drivers and their driving records, and **your** radius of operations. In doing so, **we** do not warrant that the property or operations are safe and healthful, or are in compliance with any law, rule or regulation.

**We** shall also have the right to examine and audit **your** books and records at any time during the policy period and any extensions of that period and within three years after termination of the policy, as far as they relate to the subject matter of this insurance.

11. **Fraud or Misrepresentation**

This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an **accident** or **loss**, if **you**:

1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
2. concealed or misrepresented any material fact or circumstance; or
3. engaged in fraudulent conduct;

at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered.

Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you**:

1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;

2.  conceal or misrepresent any material fact or circumstance; or
3.  engage in fraudulent conduct;

in connection with a requested change, **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an **accident** or **loss**.

When **we** have not voided or reformed the policy, **we** may still deny coverage for an **accident** or **loss** if **you**, in connection with the policy application, or in connection with any requested change, have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an **accident** or **loss** if **you** or any other insured knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. **We** reserve all rights to indemnity against a person committing fraud or misrepresentation for all payments made and costs incurred.

12.  **Liberalization**

If **we** make a change that broadens a coverage **you** have under this edition of **your** policy without additional charge, **you** will receive the broadened coverage. The broadened coverage applies on the date the coverage change is implemented in **your** state. This provision does not apply to a general program revision or **our** issuance of a subsequent edition of **your** policy. Otherwise, this policy can be changed only by endorsement issued by **us**.

13.  **Severability**

Except with respect to the Limit of Liability, the coverage afforded applies separately to each insured who is seeking coverage or against whom a claim or lawsuit is brought.

14.  **Settlement of Claims**

**We** may use estimating, appraisal, or injury evaluation systems to adjust claims under this policy and to determine the amount of damages, expenses, or loss payable under this policy. Such systems may be developed by **us** or a third party and may include computer software, databases, and specialized technology.

15.  **Automatic Termination**

If **we** or an affiliate offers to renew or continue this policy and **you** or **your** representative does not accept, this policy will automatically terminate at

the end of the current policy period at 12:01 a.m. Failure to pay the required renewal or continuation premium when due will mean that **you** have not accepted **our** offer.

If **you** obtain other insurance on an **insured auto**, any similar insurance provided by this policy will terminate as to that **insured auto** on the effective date and at the effective time of the other insurance.

If an **insured auto** is sold or transferred, any insurance provided by this policy will terminate as to that **insured auto** on the effective date of the sale or transfer.

16. **Duty to Report Changes**

   **You** must promptly notify **us** when:
   1. **your** mailing or business address changes;
   2. the principal garaging address of an **insured auto** changes;
   3. there is any change with respect to the persons who operate an **insured auto**;
   4. there is a change in the driver's license status, or state or country of license issuance, of any person using an **insured auto**; or
   5. **you** acquire, sell, or dispose of **autos**.

17. **Terms of Policy Conformed to Statutes**

   If any provision of this policy fails to conform to the statutes of the state listed on **your** application as **your** business location, the provision shall be deemed amended to conform to such statutes. All other provisions shall be given full force and effect. Any disputes as to the coverages provided or the provisions of this policy shall be governed by the law of the state listed on **your** application as **your** business location.

Form 6912 (02/19)

# INDEX OF ENDORSEMENTS

**All forms appearing in this endorsement section do not automatically pertain to your policy. Only those endorsements whose form numbers appear on your declarations page apply to your policy.**

| **Form No./Description** | **Page** |
|---|---|

1797 (02/19)
**Contingent Liability Endorsement—Limited Liability Coverage For Non-Trucking Use Of An Automobile** ................................... 31

1890 (02/19)
**Employer's Non-Ownership Liability Endorsement** ...................... 32

1891 (02/19)
**Hired Auto Coverage Endorsement** ...................................... 33

2366 (02/11)
**Blanket Additional Insured Endorsement** .......................... 34

2367 (06/10)
**Blanket Waiver of Subrogation Endorsement** ...................... 35

2368 (06/10)
**Loan/Lease Gap Coverage Endorsement**........................... 35

2852 CO (02/19)
**Uninsured/Underinsured Motorist Coverage Endorsement** .......... 36

4717 (02/19)
**Trailer Interchange Coverage Endorsement**........................ 41

4757 CO (02/19)
**Medical Payments Coverage Endorsement** ........................ 44

4852 CO (06/05)
**Cancellation and Nonrenewal Endorsement** ...................... 49

4881 CO (02/19)
**Colorado Amendatory Endorsement** ............................. 51

5701 (02/19)
**Individual Named Insured Endorsement** ......................... 53

Z228 (01/11)

**Mobile Equipment As Insured Autos Endorsement**. . . . . . . . . . . . . . . . . 55

Z438 (02/19)

**Garage Operations Physical Damage Legal Liability
Coverage Endorsement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 57

Z439 (02/19)

**Non-Owned Trailer Physical Damage Coverage Endorsement**. . . . . . . . 63

Z442 (02/19)

**Any Automobile Legal Liability Coverage Endorsement** . . . . . . . . . . . . 65

Form 1797 (02/19)

## CONTINGENT LIABILITY ENDORSEMENT—LIMITED LIABILITY COVERAGE FOR NON-TRUCKING USE OF AN AUTOMOBILE

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### PART I—LIABILITY TO OTHERS

A.   Under the Additional Definitions Used In This Part Only section:

Subsection A.3. is deleted and replaced by the following:

3.   Any other person or organization, but only with respect to the legal liability of that person or organization for acts or omissions of any person otherwise covered under this Part I—Liability To Others. However, **insured** does not include anyone engaged in the business of transporting property by auto for hire that is liable for **your** conduct.

B.   Under the Exclusions of Part I, the following exclusion is added:

**Trucking Use**
Coverage under this Part I, including **our** duty to defend, does not apply to an **insured auto** or any attached **trailer** while operated, maintained, or used:
a.   To carry property or while such property is being loaded or unloaded from the **insured auto** or an attached **trailer**; or
b.   In any business or for any business purpose.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

31

Form 1890 (02/19)

## EMPLOYER'S NON-OWNERSHIP LIABILITY ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

### ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT

If **you** pay a premium for this Employer's Non-Ownership Liability coverage, then the following definition is added:

"**Non-owned auto**" means an **auto** that **you** do not own, lease, hire, rent, or borrow, and that is used in connection with **your** business. This includes **autos** owned by **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business.

### CHANGES TO PART I—LIABILITY TO OTHERS

The definition of **insured auto** is modified to include a **non-owned auto** when used in connection with **your** business by **you** or any of **your employees**. The definition of **insured** does not include the owner of a **non-owned auto**.

### EXCLUSIONS

The insurance provided by this endorsement does not apply to **bodily injury** or **property damage** arising out of the ownership, maintenance or use of any **non-owned auto** in the conduct of any partnership or joint venture of which **you** are a partner or member and which is not shown as the named insured on the **declarations page**.

### OTHER INSURANCE

The insurance provided by this endorsement is excess over any other valid and collectible insurance.

### PREMIUM AGREEMENT

**We** may audit the number of employees and charge appropriately for additional premium up to three years after the policy expiration.

This does not alter or limit **our** general audit rights under the General Provisions section of this policy.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 1891 (02/19)

## HIRED AUTO COVERAGE ENDORSEMENT

---

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**Additional definitions used in this endorsement**

If **you** pay a premium for this Hired Auto Coverage, then the following definitions are added:
1. "**Hired auto**" means an **auto**:
   a. **you** lease, hire, rent or borrow; or
   b. **your employee** leases, hires or rents:
      i. under a contract in that individual **employee's** name;
      ii. at **your** direction and with **your** express permission; and
      iii. only while being used in the conduct of **your** business.

   This does not include any **auto you** or an **employee** leases, hires, rents or borrows from any of **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or member of their households.
2. "**Cost of hire**" means the total amount paid by **you** for the hire of **autos**.

**Changes to Part I—Liability To Others**

When used in Part I—Liability To Others, the definition of **insured auto** is amended to include **hired auto**.

**Other Insurance**

The insurance provided by this Hired Auto Coverage endorsement is excess over any other valid and collectible insurance, whether primary, excess, or contingent.

**Premium agreement**

The premium for this Hired Auto Coverage is based on the **cost of hire**, and is subject to a minimum **cost of hire**. **We** may audit the **cost of hire** and charge appropriately for additional premium for up to three years after the policy expiration.

This does not alter or limit **our** general audit rights under the General Provisions section of this policy.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 2366 (02/11)

## BLANKET ADDITIONAL INSURED ENDORSEMENT

---

This endorsement modifies insurance provided by the Commercial Auto Policy, Motor Truck Cargo Legal Liability Coverage Endorsement, and/or Commercial General Liability Coverage Endorsement, as appears on the **declarations page**. All terms and conditions of the policy apply unless modified by this endorsement.

If **you** pay the fee for this Blanket Additional Insured Endorsement, **we** agree with **you** that any person or organization with whom **you** have executed a written agreement prior to any **loss** is added as an additional **insured** with respect to such liability coverage as is afforded by the policy, but this insurance applies to such additional **insured** only as a person or organization liable for **your** operations and then only to the extent of that liability. This endorsement does not apply to acts, omissions, products, work, or operations of the additional **insured**.

Regardless of the provisions of paragraph a. and b. of the "Other Insurance" clause of this policy, if the person or organization with whom **you** have executed a written agreement has other insurance under which it is the first named **insured** and that insurance also applies, then this insurance is primary to and non-contributory with that other insurance when the written contract or agreement between **you** and that person or organization, signed and executed by **you** before the **bodily injury** or **property damage** occurs and in effect during the policy period, requires this insurance to be primary and non-contributory.

In no way does this endorsement waive the "Other Insurance" clause of the policy, nor make this policy primary to third parties hired by the **insured** to perform work for the **insured** or on the **insured's** behalf.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 2367 (06/10)

## BLANKET WAIVER OF SUBROGATION ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy, Motor Truck Cargo Legal Liability Coverage Endorsement, and/or Commercial General Liability Coverage Endorsement, as appears on the **declarations page**. All terms and conditions of the policy apply unless modified by this endorsement.

If **you** pay the fee for this Blanket Waiver of Subrogation Endorsement, **we** agree to waive any and all subrogation claims against any person or organization with whom a written waiver agreement has been executed by the named insured, as required by written contract, prior to the occurrence of any **loss**.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 2368 (06/10)

## LOAN/LEASE GAP COVERAGE ENDORSEMENT

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

**INSURING AGREEMENT—LOAN/LEASE PAYOFF COVERAGE**

If **you** pay the premium for this coverage, and the **insured auto** for which this coverage was purchased is deemed by **us** to be a **total loss**, **we** will pay, in addition to any amounts otherwise payable under Part II of **your** policy, the difference between:

1.  the actual cash value of the **insured auto** at the time of the **total loss**; and
2.  any greater amount the owner of the **insured auto** is legally obligated to pay under a written loan or lease agreement to which the **insured auto** is subject at the time of the **total loss**, reduced by:
    a.  unpaid finance charges or refunds due to the owner for such charges;
    b.  excess mileage charges or charges for wear and tear;
    c.  charges for extended warranties or refunds due to the owner for extended warranties;
    d.  charges for credit insurance or refunds due to the owner for credit insurance;
    e.  past due payments and charges for past due payments; and
    f.  collection or repossession expenses.

However, **our** payment under this coverage shall not exceed the limit of liability shown on the **declarations page**. The limit of liability is a percentage of the actual cash value of the **insured auto** at the time of the loss.

This coverage applies only if **you** have purchased both Comprehensive Coverage and Collision Coverage for that **insured auto** and the loss is covered under one of those coverages.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 2852 CO (02/19)

## UNINSURED/UNDERINSURED MOTORIST
## COVERAGE ENDORSEMENT

---

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy, and related endorsements, is modified as follows:

### INSURING AGREEMENT—UNINSURED/UNDERINSURED MOTORIST BODILY INJURY COVERAGE

Subject to the Limits of Liability, if **you** pay the premium for Uninsured/Underinsured Motorist Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured auto** or an **underinsured auto** because of **bodily injury**:
1. sustained by an **insured**;
2. caused by an **accident**; and
3. arising out of the ownership, maintenance, or use of an **uninsured auto** or an **underinsured auto**.

### INSURING AGREEMENT—UNINSURED MOTORIST PROPERTY DAMAGE COVERAGE

Subject to the Limits of Liability, if **you** pay a premium for Uninsured Motorist Property Damage Coverage, **we** will pay for damages, other than punitive or exemplary damages, which an **insured** is entitled to recover from the **owner** or operator of an **uninsured auto** due to **property damage**:
1. caused by an **accident**; and
2. arising out of the operation, maintenance, or use of an **uninsured auto**.

**NOTICE REQUIREMENT**

Any **insured** who brings a lawsuit against an owner or operator of:

1. an **uninsured auto** or an **underinsured auto** with respect to a **bodily injury** claim; or

2. an **uninsured auto** with respect to a **property damage** claim;

must promptly notify **us** of the filing of said lawsuit.

**ADDITIONAL DEFINITIONS**

When used in this endorsement, whether in the singular, plural, or possessive:

1. "**Insured**" means:

    a. if the named insured shown on the **declarations page** is a natural person:

    (i)   **you** or a **relative**;

    (ii)  any person using or **occupying your insured auto** or a **temporary substitute auto**; and

    (iii) any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or

    b. if the named insured shown on the **declarations page** is a corporation, partnership, organization or any other entity that is not a natural person:

    (i)   any person using or **occupying your insured auto** or a **temporary substitute auto**; and

    (ii)  any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

    For purposes of this definition, **insured auto** includes **mobile equipment** that is:

    a. owned by **you**;

    b. leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or

    c. not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.

    However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of **loss** it is being:

    (i)   used in **your** business;

    (ii)  operated on a public highway; and

    (iii) operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

2. "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or **relative**.

3. "**Owned**" means the person or organization:

    a. holds legal title to the vehicle;

b.    has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or

c.    has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

4.    "**Owner**" means the person or organization who, with respect to a vehicle:

a.    holds legal title to the vehicle;

b.    has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or

c.    has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

5.    "**Property damage**" means physical damage to, or destruction of, an **insured auto** as a result of actual physical contact between the **insured auto** and an **uninsured auto**. **Property damage** does not include loss of use of an **insured auto**.

6.    "**Underinsured auto**" means an **auto** to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but its limit of liability for **bodily injury** is less than the amount of the **insured's bodily injury** damages.

An "**underinsured auto**" does not include any **auto** or equipment:

a.    owned by, furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative**;

b.    owned by any governmental unit or agency;

c.    designed mainly for use off public roads, while not on public roads;

d.    while being used as a residence or premises;

e.    shown on the **declarations page** of this policy; or

f.    that is an **uninsured auto**.

7.    "**Uninsured auto**" means an **auto** or trailer of any type:

a.    to which no **bodily injury** liability bond or policy applies at the time of the **accident**;

b.    to which a **bodily injury** liability bond or policy applies at the time of the **accident**, but the bonding or insuring company:

(i)    denies coverage;

(ii)    is or becomes insolvent;

c.    that is a hit-and-run vehicle whose operator or **owner** cannot be identified and which causes an **accident** resulting in **property damage** or **bodily injury** to an **insured**, provided that the **insured**, or someone on his or her behalf, reports the **accident** to the police or civil authority within twenty-four (24) hours or as soon as practicable after the **accident**; or

d.    that is operated by an alleged tortfeasor who is deemed to be uninsured as set forth in Colorado Revised Statute 10-4-609, as amended.

An "**uninsured auto**" does not include any **auto** or equipment:

a.    **owned** by, furnished to, or available for the regular use of **you** or, if the named insured is a natural person, a **relative**;

b.    **owned** or operated by a self-insurer under any applicable vehicle law, except a self-insurer that is or becomes insolvent;

c.    **owned** by any governmental unit or agency;

d.    designed mainly for use off public roads, while not on public roads;

e.    while being used as a residence or premises;

f.   shown on the **declarations page** of this policy;

g.   not required to be registered as a motor vehicle; or

h.   that is an **underinsured auto**.

**EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EX-CLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS EN-DORSEMENT.**

1.   Coverage under this endorsement is not provided for **bodily injury** sustained by any person while using or **occupying**:
   a.   an **insured auto** without the express or implied permission of **you** or, if the named insured is a natural person, a **relative**; or
   b.   a **non-owned auto** without the express or implied permission of the **owner**;

2.   Coverage under this endorsement will not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
   a.   workers' compensation law;
   b.   disability benefits law; or

3.   Coverage under this endorsement will not apply to **bodily injury** sustained by any person if that person or the legal representative of that person settles without **our** written consent.

Coverage under this endorsement is not provided for **property damage**:

1.   sustained while an **insured auto** is being used or driven by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles, unless that business is **yours**;

2.   resulting from, or sustained during practice or preparation for:
   a.   any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
   b.   any driving activity conducted on a permanent or temporary racetrack or racecourse;

3.   due to a nuclear reaction or radiation;

4.   for which insurance is afforded under a nuclear energy liability insurance contract;

5.   to a **trailer**;

6.   if there is no physical contact between the **uninsured auto** and the **insured auto**; or

7.   resulting from damage caused by an **underinsured auto**.

**LIMITS OF LIABILITY**

Regardless of the number of premiums paid, or the number of **insured autos** or trailers shown on the **declarations page**, or the number of policies issued by **us** or any affiliated company, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the Limit of Liability shown for Uninsured/Underinsured Motorist Coverage or Uninsured Motorist Property Damage Coverage on the **declarations page**.

If the **declarations page** shows that "combined single limit" or "CSL" applies, the amount shown is the most **we** will pay for the total of all **bodily injury** damages resulting from any one **accident**. However, without changing this total "each accident" limit of liability, **we** will comply with any law that requires **us** to provide any separate limits.

If **your declarations page** shows a split limit:
1.  the amount shown for "each person" is the most **we** will pay for all damages due to **bodily injury** to one person; and
2.  subject to the "each person" limit, the amount shown for "each accident" is the most **we** will pay for all damages due to **bodily injury** sustained by two or more persons in any one **accident**.

The "each person" limit of liability includes the total of all claims made for **bodily injury** to an **insured** and all claims of others derived from such **bodily injury**, including, but not limited to, emotional injury or mental anguish resulting from the **bodily injury** of another or from witnessing the **bodily injury** to another, loss of society, loss of companionship, loss of services, loss of consortium, and wrongful death.

The damages recoverable for **bodily injury** under this endorsement shall be reduced by all sums:
1.  paid because of **bodily injury** by or on behalf of any persons or organizations that may be legally responsible; and
2.  paid under Part I—Liability To Others.

The limit of liability for **property damage** under this endorsement will be reduced by all sums paid because of **property damage** by or on behalf of any persons or organizations that may be legally responsible, including, but not limited to, all sums paid under Part I—Liability To Others.

The Limit of Liability under this endorsement for **property damage** to an **insured auto** is the lowest of:
1.  the actual cash value of the **insured auto** at the time of the **accident**, reduced by its salvage value if **you** or the **owner** retain the salvage;
2.  the amount necessary to replace the **insured auto**, reduced by its salvage value if **you** or the **owner** retain the salvage;
3.  the amount necessary to repair the **insured auto** to its pre-loss physical condition; or
4.  any limit of liability shown on the **declarations page** for "uninsured motorist property damage" under this endorsement, reduced by the salvage value of the **insured auto** if **you** or the **owner** retain the salvage.

**We** shall not pay for **property damage** to the extent that such damages are paid or payable under any other property damage or physical damage insurance, including all sums paid or payable under Part II—Damage To Your Auto.

Payments for **property damage** under this endorsement are subject to the following provisions:

1. any amount payable under this endorsement for **property damage** shall be subject to the deductible shown on the **declarations page**;
2. no more than one deductible shall be applied to any one **accident**; and
3. an adjustment for depreciation or physical condition, which may also be referred to as betterment, wear and tear, or prior damage, will be made in determining the limit of liability at the time of the **accident**.

Any payment made to a person under this endorsement shall reduce any amount that the person is entitled to recover under Part I—Liability To Others or Part II—Damage To Your Auto.

**OTHER INSURANCE**

When the named insured is a natural person, if there is other applicable uninsured or underinsured motorist coverage, **we** will pay only **our** share of the combined limits of all available uninsured or underinsured motorist coverage, reduced by all payments made by or on behalf of all liable persons. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we** provide shall be excess over any other uninsured or underinsured motorist coverage, except for **bodily injury** to **you** or a **relative** when **occupying** an **insured auto**.

When the named insured is a corporation, partnership, organization or any other entity that is not a natural person, if there is other applicable uninsured or underinsured motorist coverage, **we** will pay only **our** share of the combined limits of all available uninsured or underinsured motorist coverage, reduced by all payments made by or on behalf of all liable persons. **Our** share is the proportion that **our** limit of liability bears to the total of all available coverage limits. However, any insurance **we** provide for the occupant of an **insured auto** shall be excess over any other uninsured or underinsured motorist coverage.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 4717 (02/19)

**TRAILER INTERCHANGE COVERAGE ENDORSEMENT**

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

**INSURING AGREEMENT**

Subject to the Limits of Liability, if **you** pay the premium for Trailer Interchange Coverage, **we** will pay damages for **property damage** for which **you** become legally

41

responsible because of **loss** to a **trailer** not owned by **you**, and its equipment, while in **your** possession. The **trailer** must be in **your** possession under a written trailer or equipment interchange agreement in which **you** assume liability for **loss** to the **trailer** while in **your** possession.

**We** will pay for a **loss** to the **trailer** and its equipment under the coverages described below, as reflected on **your declarations page**:

a.  Collision Coverage. For **loss** caused by:
    (i)   The **trailer's** collision with another object; or
    (ii)  The **trailer's** overturn.
b.  Comprehensive Coverage. For any **loss** except one caused by:
    (i)   The **trailer's** collision with another object; or
    (ii)  The **trailer's** overturn.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this endorsement. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

## ADDITIONAL DEFINITION

"**Trailer**", when used in this endorsement, includes a shipping container.

## ADDITIONAL PAYMENTS

In addition to **our** Limit of Liability, **we** will pay for an **insured**:

a.  all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
b.  interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**. **Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.
c.  the premiums on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;
d.  reasonable expenses, including loss of earnings up to $250 a day, incurred at **our** request;
e.  all reasonable expenses necessary to return a stolen **trailer** to **you**, unless **we** determine the **trailer** to be a total loss; and
f.  all reasonable expenses necessary to remove a **trailer** from the site of an **accident** or **loss** and transport it to a repair facility.

## EXCLUSIONS

a.  **We** will not pay for **loss** caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.
   (i)  Nuclear Hazard.
      (1)  The explosion of any weapon employing atomic fission or fusion; or
      (2)  Nuclear reaction or radiation, or radioactive contamination, however caused.
   (ii)  War or Military Action.
      (1)  War, including undeclared or civil war;
      (2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or agents; or
      (3)  Insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority in hindering or defending against any of these.
b.  **We** will not pay for loss of use.
c.  **We** will not pay for **loss** caused by, or resulting from, any of the following unless caused by another **loss** that is covered by this insurance;
   (i)  Wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion; or
   (ii)  Blowouts, punctures, or other road damage to tires.

## LIMIT OF INSURANCE AND DEDUCTIBLE

The most **we** will pay for **loss** to any one **trailer** is the least of the following amounts minus any applicable deductible shown on the **declarations page**:
a.  The actual cash value of the damaged or stolen property at the time of the **loss**;
b.  The amount necessary to replace the stolen or damaged property with other of like kind and quality;
c.  The amount necessary to repair the damaged property to its pre-loss condition; or
d.  The applicable Limit of Liability for the property as shown on the **declarations page**.

A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to the policy, only one deductible will apply to the entire **loss** event. No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **trailer** to **you**.

## ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form 4757 CO (02/19)

## MEDICAL PAYMENTS COVERAGE ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

## INSURING AGREEMENT

If **you** pay the premium for this coverage, **we** will pay the expenses incurred for necessary **medical care** or **trauma care** received within three years from the date of an **auto accident** because of **bodily injury**:

1. sustained by an **insured**; and
2. caused by an **accident**.

## ADDITIONAL DEFINITIONS

When used in this endorsement, whether in the singular, plural, or possessive:

1. "**Insured**" means:
   A. if the named insured shown on the **declarations page** is a natural person:
      (1) **you** or a **relative**:
         (a) while **occupying** any **auto**;
         (b) when struck by an **auto** or a **trailer**, while not **occupying** a self-propelled motor vehicle; and
      (2) any other person while **occupying** an **insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**, with the permission of **you** or a **relative**; or
   B. if the named insured shown on the **declarations page** is a corporation, partnership, organization, or any other entity that is not a natural person, any person **occupying** an **insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**, with the permission of **you**.
   For purposes of this definition, **insured auto** includes **mobile equipment** that is:
      (i) owned by **you**;
      (ii) leased, hired, or borrowed by **you** and **you** have purchased either "Hired Auto Coverage" or "Any Automobile Legal Liability Coverage" from **us**; or
      (iii) not owned, leased, hired, or borrowed by **you** and **you** have purchased either "Employer's Non-Ownership Liability Coverage" or "Any Automobile Legal Liability Coverage" from **us**.
   However, **mobile equipment** meeting any of those three criteria will be included in the definition only if at the time of **loss** it is being:
      (i) used in **your** business;

44

    (ii)  operated on a public highway; and

    (iii)  operated in a state or province where it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law.

2. "**Licensed air ambulance**" means a fixed-wing or rotor-wing aircraft, licensed by the Colorado Department of Public Health and Environment, that is equipped to provide air transportation and is specifically designed to accommodate the medical needs of individuals who are ill, injured, or otherwise mentally or physically incapacitated and who require in-flight medical supervision.

3. "**Licensed ambulance**" means any privately or publicly owned ground vehicle that is licensed pursuant to section 25-3.5-301 of the Colorado Revised Statutes.

4. "**Licensed health care provider**" means a person, corporation, facility, or institution licensed or certified by the state of Colorado to provide health care or professional services as a hospital, health care facility, or dispensary or to practice and practicing medicine, osteopathy, chiropractic, nursing, physical therapy, occupational therapy, podiatry, dentistry, pharmacy, acupuncture, or optometry, or an officer, employee, or agent thereof working under the supervision of such person or institution in providing such health care services.

5. "**Medical care**" means all medically necessary and **accident** related health care, rehabilitation services, and funeral services provided by a **licensed health care provider** to an injured **insured** in an **auto accident** for which benefits under the terms under this Medical Payments Coverage endorsement are payable.

6. "**Non-owned auto**" means any **auto** that is not **owned** by **you** or furnished for **your** regular use and, if the named insured is a natural person, not **owned** by or furnished for the regular use of the named insured's spouse or a **relative**.

7. "**Owned**" means the person or organization:

    a.  holds legal title to the vehicle;

    b.  has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or

    c.  has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

8. "**Owner**" means the person or organization who, with respect to a vehicle:

    a.  holds legal title to the vehicle;

    b.  has legal possession of the vehicle that is subject to a written security agreement with an original term of six months or more; or

    c.  has legal possession of the vehicle that is leased to that person or organization under a written agreement for a continuous period of six months or more.

9. "**Provider**" means a **licensed health care provider**, **licensed air ambulance**, **licensed ambulance**, **trauma physician**, or **trauma center**.

10. "**Stabilize**" means, with respect to a medical condition resulting from a **trauma**, to provide such medical treatment of the condition as may be necessary to assure, within reasonable medical probability that no material deterioration of the condition is likely to result or occur during the transfer of the individual to or from a **trauma center**.

11. "**Trauma**" means an injury or wound to a living person caused by the application of an external physical force. **Trauma** includes any event that threatens life, limb, or the well-being of an individual in such a manner that a prudent lay person would believe that immediate **medical care** is needed.

12. "**Trauma care**" means care provided by a **licensed ambulance** or **air ambulance trauma physician**, or **trauma center** to an injured **insured** in an **auto accident** from the time the administration of care begins to the time the patient is fully stabilized or through the first episode of care, not to exceed 72 hours after the administration of care begins. The term includes a **trauma care** system, **trauma** transport protocols, and the assessment and classification of an injured **insured** in order to determine the severity of **trauma** injury and to prioritize care for the injured **insured**.

13. "**Trauma center**" means the emergency department in a licensed or certified hospital or a health care facility that is designated by the Colorado Department of Public Health and Environment as a Level I, II, III, IV, or V facility or as a regional pediatric **trauma center**.

14. "**Trauma physician**" means a **trauma** surgeon, orthopedic surgeon, neurosurgeon, intensive care unit physician, anesthesiologist, or physician who provides care in a **trauma center** to a **trauma** patient injured in an **auto accident**.

## EXCLUSIONS—READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE AFFORDED UNDER THIS ENDORSEMENT.

Coverage under this endorsement does not apply to **bodily injury**:

1. sustained while **occupying** any **auto** or **trailer** while being used as a residence or premises;

2. if workers' compensation benefits are available for the **bodily injury**;

3. arising out of an **accident** involving an **auto** or **trailer** while being used by a person while employed or engaged in the business of selling, leasing, repairing, parking, storing, servicing, delivering, or testing vehicles, unless that business is **yours**;

4. to any person resulting from, or sustained during practice or preparation for:
    a. any pre-arranged or organized racing, stunting, speed, or demolition contest or activity; or
    b. any driving activity conducted on a permanent or temporary racetrack or racecourse;

5. due to a nuclear reaction or radiation;

6. for which insurance:
    a. is afforded under a nuclear energy liability insurance contract; or
    b. would be afforded under a nuclear energy liability insurance contract but for its termination upon exhaustion of its limit of liability;

7. for which the United States Government is liable under the Federal Tort Claims Act;

8. sustained by any person while occupying or when struck by any vehicle:
    a. **owned** by **you**, or if the named insured is a natural person, a **relative**; or
    b. furnished or available for **your** or a **relative's** regular use;

46

other than an **insured auto** for which this coverage has been purchased;

9.  sustained by any person while **occupying** a **non-owned auto** without the express or implied permission of the **owner**;

10. caused directly or indirectly by:
    a.  war (declared or undeclared) or civil war;
    b.  warlike action by any military force of any government, sovereign, or other authority using military personnel or agents. This includes any action taken to hinder or defend against an actual or expected attack; or
    c.  insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these acts;

11. caused directly or indirectly by:
    a.  any accidental or intentional discharge, dispersal, or release of radioactive, nuclear, pathogenic, or poisonous biological material; or
    b.  any intentional discharge, dispersal, or release of chemical or hazardous material for any purpose other than its safe and useful purpose;

12. caused by, or reasonably expected to result from, a criminal act or omission of an **insured**. This exclusion applies regardless of whether the **insured** is actually charged with, or convicted of, a crime. For purposes of this exclusion, criminal acts or omissions do not include traffic violations;

13. that is intentionally inflicted on an **insured** at that person's request or self-inflicted; or

14. sustained while **occupying** any vehicle that has less than four wheels or is not designed for operation principally upon public roads.

## LIMITS OF LIABILITY

Regardless of the number of premiums paid, or the number of **insured autos** or **trailers** shown on the **declarations page**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the limit of liability shown for Medical Payments Coverage on the **declarations page**.

Any amount payable to an **insured** under this endorsement will be reduced by any amount paid or payable for the same expense under Part I—Liability To Others.

No one will be entitled to duplicate payments under this policy for the same elements of damages.

## PAYMENT OF BENEFITS

Medical payments benefits under this endorsement shall be paid to persons providing medically necessary and **accident** related **trauma care** or **medical care**. Except as provided in paragraphs 1., 2., and 3. below, payment of claims covered under this endorsement shall be made in accordance with section 10-4-642 of the Colorado Insurance Code.

1. Upon receiving notice, either from a **provider** or the **insured**, of an **accident** for which the medical payments coverage provided under this endorsement may apply, **we** shall reserve $5,000 for the payment of **trauma care** provided by a **licensed air ambulance**, **licensed ambulance**, **trauma physician**, or **trauma center** in the following priority, as applicable:

   a. Benefits shall be paid first to **licensed ambulances** or **air ambulances** that provide **trauma care** at the scene of or immediately after the **auto accident**, including transport to or from a **trauma center**.

   b. After payments to **providers** described in subparagraph a. above, benefits shall be paid next to **trauma physicians** that provide **trauma care** to **stabilize** or provide the first episode of care to the injured **insured**.

   c. After payments to **providers** described in subparagraphs a. and b. above, benefits shall be paid next to **trauma centers** designated as Level IV or V pursuant to section 25-3.5-703(4) of the Colorado Revised Statutes that provide **trauma care** to **stabilize** or provide the first episode of care to the injured **insured**.

   d. After payments to **providers** described in subparagraphs a., b., and c. above, benefits shall be paid next to **trauma centers** designated as Level I, II, or III or as a regional pediatric **trauma center** pursuant to section 25-3.5-703(4) of the Colorado Revised Statutes that provide **trauma care** to **stabilize** or provide the first episode of care to the injured **insured**.

2. The reserve shall be held and used to pay claims of **trauma care providers** described in this Payment of Benefits section for no more than 30 days after receipt of the **accident** notice. After the 30-day period, any amount of the reserve for which **we** have not received a claim for reimbursement from a **trauma care provider** described in this Payment of Benefits section may be used to pay any other claims for reimbursement submitted by other **providers.**

3. The periods specified in section 10-4-642 of the Colorado Insurance Code for the prompt payment of medical payments coverage benefits shall be tolled for the period that **we** are required under this Payment of Benefits section to hold payment of a claim from a **provider** that did not provide **trauma care**, but only to the extent the medical payments coverage benefits not held in reserve are insufficient to pay the claim.

## OUR RECOVERY RIGHTS

**We** shall not exercise **our** recovery rights under the General Provisions section of this policy against an **owner**, user, or operator of an **auto**, or against any person or organization legally responsible for the acts or omissions of such person, in any action for damages for medical payments benefits paid under this endorsement.

However, nothing shall be construed to afford **us** a cause of action against a person to whom, or for whom, the medical payments coverage benefits were paid except in a case where the benefits were paid by reason of fraud.

## UNNECESSARY MEDICAL EXPENSES

If an **insured** incurs expenses for **medical care** that **we** deem to be unnecessary, **we** may refuse to pay for those expenses and contest them.

If the **medical care provider** sues the **insured** because **we** refuse to pay expenses for **medical care** that **we** deem to be unnecessary, **we** will pay any resulting defense costs, and any resulting judgment against the **insured**, subject to the limit of liability for this coverage. **We** will choose the counsel. **We** will also pay reasonable expenses, including loss of earnings up to $200 per day, incurred at **our** request.

The **insured** may not sue **us** for expenses for **medical care we** deem to be unnecessary unless the **insured** paid the entire disputed amount to the **medical care provider** or the **medical care provider** has initiated collection activity against the **insured** for the unnecessary expenses.

## OTHER INSURANCE

If there is other applicable **auto** medical payments insurance, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide for an **insured occupying**:
1. an **auto**, other than an **insured auto** or **temporary substitute auto**; or
2. a **trailer**, other than a **trailer** while connected to an **insured auto**;
will be excess over any other **auto** or **trailer** insurance providing payments for medical or funeral care.

## ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form 4852 CO (06/05)

### CANCELLATION AND NONRENEWAL ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

## CANCELLATION

**You** may cancel this policy by calling or writing **us**, and stating the future date that **you** wish the cancellation to be effective.

**We** may cancel this policy by mailing a notice of cancellation to the named insured shown on the **Declarations Page** at the last known address appearing in **our** records. If **we** cancel this policy during the first fifty-nine (59) days of the initial policy period, or if **we** cancel this policy at any time due to nonpayment of premium, notice of cancellation will be mailed at least ten (10) days before the effective date of cancellation. After this policy is in effect for more than fifty-nine (59) days, notice of cancellation due to any reason other than nonpayment of premium will be mailed at least forty-five (45) days before the effective date of cancellation.

**We** may cancel this policy for any reason within the first fifty-nine (59) days of the initial policy period.

After this policy is in effect for more than fifty-nine (59) days, or if this is a renewal or continuation policy, **we** may only cancel for one or more of the following reasons:

1. **you** do not pay the required premium for this policy when due;
2. a false statement knowingly made by **you** on the application for insurance;
3. a substantial change in the exposure or risk other than that indicated in the application and underwritten as of the effective date of the policy unless **you** have notified **us** of the change and **we** accept such change; or
4. any other reason specified by law.

With respect to cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverage for all persons and all **autos**.

If this policy is canceled, coverage will not be provided as of the effective date and time shown in the notice of cancellation.

**CANCELLATION REFUND**

Upon cancellation, **you** may be entitled to a premium refund. However, **our** making or offering of a refund is not a condition of cancellation.

If this policy is canceled, any refund due will be computed on a daily pro-rata basis.

**NONRENEWAL**

If **we** decide not to renew or continue this policy, **we** will mail notice of nonrenewal to the first named insured shown on the **Declarations Page** at the last known address appearing in **our** records. Notice will be mailed at least forty-five (45) days before the end of the policy period.

**PROOF OF NOTICE**

Proof of mailing of any notice will be sufficient proof of notice.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

Form 4881 CO (02/19)

## COLORADO AMENDATORY ENDORSEMENT

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**GENERAL DEFINITIONS**

The definition of "property damage" is deleted.

The definition of "relative" is deleted and replaced by the following:

16.  "**Relative**" means any person living in the household in which the named insured resides who is related to the named insured by blood, marriage, civil union, or adoption, including a ward or foster child. This term only applies if the named insured is a natural person.

**PART I—LIABILITY TO OTHERS**

The following definition is added to the Additional Definitions Used In This Part Only section:

"**Property damage**" means physical damage to, destruction of, or loss of use of, tangible property.

The last paragraph of the Limits of Liability section is deleted and replaced by the following:

Any amount payable under Part I—Liability To Others to or for an injured person will be reduced by any payment made to that person under any Uninsured Motorist Coverage, Underinsured Motorist Coverage, or Medical Payments Coverage provided by this policy.

The following is added as an additional paragraph at the end of the Exclusions section:

Pollution Exclusion Buy Back—If a payment is made subject to the MCS90 endorsement, the reimbursement language in the MCS90 endorsement is removed for a claim that is not covered under **covered pollution cost or expense** or is excluded under Exclusion 7 or 10 under Part I—Liability to Others.

51

**PART II—DAMAGE TO YOUR AUTO**

The following is added to the Limits of Liability section:

Any amount paid or payable to a person under this Part II shall be reduced by any amount paid for property damage under any Uninsured/Underinsured Motorist Coverage of this policy.

**GENERAL PROVISIONS**

11. **Fraud or Misrepresentation**

The entire section is deleted and replaced by the following:

> This policy was issued in reliance upon the information provided on **your** insurance application. **We** may void this policy at any time, including after the occurrence of an **accident** or **loss**, if **you** have knowingly and with intent to defraud:
> 1. made incorrect statements or representations to **us** with regard to any material fact or circumstance;
> 2. concealed or misrepresented any material fact or circumstance; or
> 3. engaged in fraudulent conduct;
> at the time of application. This means that **we** will not be liable for any claims or damages that would otherwise be covered. However, if **we** void this policy, this shall not affect coverage under Part I—Liability To Others or Uninsured/Underinsured Motorist Coverage, up to the minimum limits required by the financial responsibility law of the state shown on **your** application as **your** residence, for an accident that occurs before **we** notify the named insured that the policy is void. No payment will be made to any person who engages in fraudulent conduct. If **we** void this policy, **you** must reimburse **us** if **we** make a payment.
>
> Any changes **we** make at **your** request to this policy after inception will be made in reliance upon information **you** provide. If **you** have knowingly and with intent to defraud:
> 1. make incorrect statements or representations to **us** with regard to any material fact or circumstance;
> 2. conceal or misrepresent any material fact or circumstance; or
> 3. engage in fraudulent conduct;
> in connection with a requested change, **we** may void the policy or reform it as it existed immediately prior to the requested change. **We** may do this at any time, including after the occurrence of an **accident** or **loss**. However, if **we** void this policy, this shall not affect coverage under Part I—Liability To Others or Uninsured/Underinsured Motorist Coverage, up to the minimum limits required by the financial responsibility law of the state shown on **your** application as **your** residence, for an accident that occurs before **we** notify the named insured that the policy is void. No payment will be made to any person who engages in fraudulent conduct. If **we** void this policy, **you** must reimburse **us** if **we** make a payment.

52

When **we** have not voided or reformed the policy, **we** may still deny coverage for an **accident** or **loss** if **you**, in connection with the policy application, or in connection with any requested change, have concealed or misrepresented any material fact or circumstance, or engaged in fraudulent conduct, and that concealment, misrepresentation, or fraudulent conduct was material to a risk **we** assumed.

**We** may deny coverage for an **accident** or **loss** if **you** or any other insured knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. **We** reserve all rights to indemnity against a person committing fraud or misrepresentation for all payments made and costs incurred.

The Service of Process provision is added:

18. **Service of Process**

If the insured's whereabouts for service of process cannot be determined through reasonable effort, the insured agrees to designate and irrevocably appoint **us** as the agent of the insured for service of process, pleadings, or other filings in a civil action brought against the insured or to which the insured has been joined as a defendant or respondent in any Colorado court if the cause of action concerns an incident for which the insured can possibly claim coverage. Subsequent termination of the insurance policy does not affect the appointment for an incident that occurred when the policy was in effect. The insured agrees that any such civil action may be commenced against the insured by the service of process upon **us** as if personal service had been made directly on the insured. **We** agree to forward all communications related to service of process to the last known e-mail and mailing address of the policyholder in order to coordinate any payment of claims or defense of claims that are required.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form 5701 (02/19)

## INDIVIDUAL NAMED INSURED ENDORSEMENT

---

Not all customers are eligible for this coverage. This endorsement applies to **your** policy only if the form number appears on **your declarations page.** In no event will this coverage apply if the named insured is a corporation, partnership, organization, or any other entity that is not a natural person.

This endorsement changes **your** policy. Please read it carefully.

Except as specifically modified in this endorsement, all provisions of the Commercial Auto Policy apply.

## ADDITIONAL DEFINITIONS USED IN THIS ENDORSEMENT

As used in this endorsement:

1. "**You**" and "**yours**" include **your** spouse, if a resident of the same household, except for notice of cancellation.

2. "**Non-owned auto**" means any **private passenger auto**, pickup, van, or **trailer** not owned by or furnished or available for the regular use of **you** or any **relative**, while it is in the custody of or being operated by **you** or any **relative**, with the permission of its owner.

## CHANGES IN PART I—LIABILITY TO OTHERS

A. If **you** are an individual, Exclusion 6 does not apply to **bodily injury** to **your** or any **relative's** fellow **employees**.

B. If any **private passenger auto you** own is an **insured auto** under Part I—Liability To Others and that **auto** is not used for any business purpose other than ranching or farming:

1. **Relatives** are **insureds** for any **insured auto you** own that is a **private passenger auto** and is not used for any business purpose other than ranching or farming, and for any other **auto** described in paragraph B.2. of this endorsement.

2. Any **auto you** do not own is an **insured auto** while being used, with the permission of its owner, by **you** or by any **relative** except:

   a. Any **auto** owned by any **relative**.

   b. Any **auto** furnished or available for **your** or any **relative's** regular use, including any **auto** rented for a period of more than 30 days.

   c. Any **auto** used by **you** or by any of **your relatives** while working in a business of selling, servicing, repairing, or parking **autos**.

   d. Any **auto** other than a **private passenger auto** used by **you** or any of **your relatives** while working in any business or occupation.

3. Exclusion 10 does not apply to any **insured auto** that is a **private passenger auto** and is not used for any business purpose other than ranching or farming.

4. Exclusion 16 is deleted and replaced by the following:
   **Vehicle Sharing—Private Passenger Autos**
   **Bodily injury** or **property damage** arising out of the use of an **insured auto** that is a **private passenger auto** while being used in connection with a **personal vehicle sharing program**. This exclusion does not apply to the operation of an **insured auto** by **you** or a **relative**.

## CHANGES IN PART II—DAMAGE TO YOUR AUTO

A. If any **private passenger auto you** own is an **insured auto** under Part II—Damage To Your Auto, and that **auto** is not used for any business purpose other than ranching or farming, then a **non-owned auto** will also be considered an **insured auto**. However, the most **we** will pay for **loss** to a **non-owned auto** that is a **trailer** is $500.

54

B.  Exclusion 9 is deleted and replaced by the following:
**We** will not pay for **loss** to an **insured auto** while being used in connection
with a **personal vehicle sharing program**. This exclusion does not apply to
the operation of an **insured auto** by **you** or a **relative**.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN
UNCHANGED.**

---

Form Z228 (01/11)

## MOBILE EQUIPMENT AS INSURED AUTOS ENDORSEMENT

---

Except as specifically modified in this endorsement, all provisions of the
Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto
Policy is modified as follows:

## PART I—LIABILITY TO OTHERS

**ADDITIONAL DEFINITIONS USED IN THIS PART ONLY** is modified as follows:

B.  When used in PART I—LIABILITY TO OTHERS, **insured auto** also includes:
    1.  **Trailers**, designed primarily for travel on public roads, while connected
        to **your insured auto** that is a power unit;
    2.  **Mobile equipment** while being carried or towed by an **insured auto**;
    3.  Any **temporary substitute auto**; and
    4.  Any **mobile equipment** owned by **you**, or if **you** have purchased Hired
        Auto or Non-owned Auto coverage, leased or hired by **you**, when sub-
        ject to a compulsory or financial responsibility law or other motor vehicle
        insurance law in the state or province where it is licensed or principally
        garaged. This does not change the effect of exclusion 13 concerning the
        operation of **mobile equipment**.

## MEDICAL PAYMENTS COVERAGE

If **you** pay the premium for Medical Payments Coverage, that endorsement is
modified as follows:

## ADDITIONAL DEFINITIONS

The definition of "**Insured**" is deleted and replaced by:
    "**Insured**" means:
    a.  if the named insured shown on the **Declarations Page** is a natural person:
        (i)  **you** while **occupying** any **auto**, other than an **auto owned** by **you**
             which is not an **insured auto**;

55

      (ii)  a **relative** while **occupying** an **insured auto**, **temporary substitute auto**, or **non-owned auto**;

      (iii)  **you** or any **relative** when struck by a land motor vehicle of any type, or a **trailer**, while not **occupying** a motor vehicle; and

      (iv)  any other person while **occupying** an **insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**; or

  b.  if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person, any person **occupying your insured auto**, **temporary substitute auto**, or a **trailer** while attached to an **insured auto**.

For purposes of this definition, **insured auto** includes **mobile equipment owned** by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

## UNINSURED MOTORIST AND UNDERINSURED MOTORIST COVERAGES

If **you** pay the premium for Uninsured Motorist Coverage and/or Underinsured Motorist Coverage, that endorsement is modified as follows:

## ADDITIONAL DEFINITIONS

The definition of "**Insured**" is deleted and replaced by:

  "**Insured**" means:

  a.  if the named insured shown on the **Declarations Page** is a natural person:

      (i)  **you** or a **relative**;

      (ii)  any person **occupying your insured auto** or a **temporary substitute auto**; and

      (iii)  any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) or (ii) above; or

  b.  if the named insured shown on the **Declarations Page** is a corporation, partnership, organization or any other entity that is not a natural person:

      (i)  any person **occupying your insured auto** or a **temporary substitute auto**; and

      (ii)  any person who is entitled to recover damages covered by this endorsement because of **bodily injury** sustained by a person described in (i) above.

For purposes of this definition, **insured auto** includes **mobile equipment owned** by **you**, or if **you** have purchased Hired Auto or Non-owned Auto coverage, leased or hired by **you**, when it is subject to a compulsory or financial responsibility law or other motor vehicle insurance law in the state or province where it is licensed or principally garaged.

## ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.

Form Z438 (02/19)

## GARAGE OPERATIONS PHYSICAL DAMAGE
## LEGAL LIABILITY COVERAGE ENDORSEMENT

This endorsement modifies **your** Commercial Auto Policy. Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

THIS ENDORSEMENT APPLIES ON A LEGAL LIABILITY BASIS UNLESS ONE OF THE DIRECT COVERAGE OPTIONS LISTED BELOW IS SHOWN ON **YOUR DECLARATIONS PAGE**.

**DIRECT COVERAGE OPTIONS**

**Direct Excess Insurance.** If this "Direct Excess" option is shown on **your declarations page**, the On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages provided by this endorsement are modified to apply without regard to **your** or any other **insured's** legal liability for **loss** to a **customer's auto** or **towed property**, and is excess over any other collectible insurance regardless of whether the other insurance covers **your** or any other **insured's** interest or the interest of the owner of the **customer's auto** or **towed property**.

**Direct Primary Insurance.** If this "Direct Primary" option is shown on **your declarations page**, the On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages provided by this endorsement are modified to apply without regard to **your** or any other **insured's** legal liability for **loss** to a **customer's auto**, or **towed property**, and is primary insurance.

**INSURING AGREEMENT—ON-HOOK TOWING PHYSICAL DAMAGE
LEGAL LIABILITY COVERAGE**

If **you** pay the premium for this On-Hook Towing Physical Damage Legal Liability coverage and it is shown on **your declarations page** as "On-Hook Legal Liability", **we** will pay all sums for which an **insured** is legally liable to pay for **property damage** for **loss** to **towed property**. **We** will pay under this coverage only if a limit of liability and a premium is shown for this coverage on the **declarations page**.

**We** will have the right and duty to defend any **insured** against a lawsuit asking for these damages. However, **we** have no duty to defend any **insured** against a lawsuit seeking damages for **loss** to which this insurance does not apply. **We** may investigate and settle any claim or lawsuit as **we** consider appropriate. **Our** duty to defend or settle ends when the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

## INSURING AGREEMENT—GARAGEKEEPERS STORAGE LOCATION PHYSICAL DAMAGE LEGAL LIABILITY COVERAGE

If **you** pay the premium for this Garagekeepers Storage Location Physical Damage Legal Liability coverage and it is shown on **your declarations page** as "Garagekeepers Legal Liability", **we** will pay all sums for which an **insured** is legally liable to pay as **property damage** for **loss** to a **customer's auto** or **customer's auto** equipment left in the **insured's** care while the **insured** is attending, servicing, repairing, parking, or storing it in **your garage operations** under:

1. Comprehensive Coverage.
   From any cause except:
   a. Collision of the **customer's auto** with another object; or
   b. Overturn of the **customer's auto**.

2. Collision Coverage.
   Caused by:
   a. Collision of the **customer's auto** with another object; or
   b. Overturn of the **customer's auto**.

**We** will have the right and duty to defend any **insured** against a lawsuit asking for these damages. However, **we** have no duty to defend any **insured** against a lawsuit seeking damages for **loss** to which this insurance does not apply. **We** may investigate and settle any claim or lawsuit as **we** consider appropriate. **Our** duty to defend or settle ends when the limit of liability for this coverage has been exhausted by payment of judgments or settlements.

**We** will pay under this coverage only if a limit of liability and a premium is shown for this coverage on the **declarations page**, and only for the locations listed on **your declarations page**.

### ADDITIONAL DEFINITIONS

The following additional definitions apply throughout this Garage Operations Physical Damage Legal Liability Coverage endorsement whenever the defined term appears in boldface type, whether in the singular, plural, or possessive:

1. "**Customer's auto**" means a customer's land motor vehicle, **trailer**, or **watercraft**, including a **customer's auto** left with **you** for service, repair, storage, or safekeeping. Customers include **your employees** and their **relatives** who pay for services performed.

2. "**Garage operations**" means the ownership, maintenance, or use of the locations shown on **your declarations page** for the purpose of a business of selling, servicing, repairing, parking, or storing **customers' autos**, and that portion of the roads or other accesses that adjoin such locations. **Garage operations** also includes all operations necessary or incidental to the performance of **garage operations**.

58

3.  "**Insured**" means:
    a.  **you**; and
    b.  **your** partners (if **you** are a partnership), members (if **you** are a limited liability company), employees, directors, or shareholders, but only while acting within the scope of their duties.

4.  "**Loaded in or on**" means connected to.

5.  "**Towed property**" means tangible property, not owned by or registered to **you**, in transit while **loaded in or on**, or conveyed by, an **insured auto**. **Towed property** also means property when it is moved from the place where **you** accept it for movement by or onto **your insured auto** and after it is moved from **your insured auto** to the place where it is finally delivered by **you**. **Towed property** includes a towed **auto** or **watercraft**.

6.  "**Watercraft**" means any craft, boat, vessel, or ship designed to transport persons or property by water.

7.  "**Work you performed**" includes:
    a.  Work that someone performed on **your** behalf; and
    b.  The providing of, or the failure to provide, warnings or instructions.

## ADDITIONAL PAYMENTS

In addition to **our** limit of liability, **we** will pay for an **insured** under this endorsement:

1.  All expenses **we** incur in the settlement of any claim or defense of any lawsuit;
2.  The premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** limit of liability, and **we** have no duty to apply for or furnish these bonds;
3.  Reasonable expenses incurred by that **insured** at **our** request, including loss of earnings up to $250 per day;
4.  All costs taxed against the **insured** in any lawsuit against that **insured we** defend; and
5.  Interest accruing after entry of judgment on that part of the judgment that does not exceed **our** limit of liability. This does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**.

    **Our** payment, offer in writing, or deposit in court of that part of the judgment that does not exceed **our** limit of liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit.

**EXCLUSIONS—PLEASE READ THE FOLLOWING EXCLUSIONS CAREFULLY. IF AN EXCLUSION APPLIES, COVERAGE WILL NOT BE PROVIDED.**

1. The On-Hook Towing Physical Damage Legal Liability and Garagekeepers Storage Location Physical Damage Legal Liability coverages under this endorsement do not apply to any of the following:

   a. Liability resulting from any contract or agreement by which the **insured** accepts responsibility for **loss**. This exclusion does not apply to an agreement that is an **insured contract** that was executed prior to the occurrence of any **property damage**;

   b. **Loss** due to theft or conversion caused in any way by **you** or **your** employees, partners, members, directors, or shareholders;

   c. Defective parts or materials;

   d. Faulty **work you performed**;

   e. **Loss** to any of the following:

      (i) Tape decks or other sound-reproducing equipment unless permanently installed in a **customer's auto**;

      (ii) Tapes, records, or other sound-reproducing devices designed to be used with sound-reproducing equipment;

      (iii) Sound-receiving equipment designed for use as a citizens band radio, two-way mobile radio, or telephone or scanning monitor receiver, including its antennas and other accessories, unless permanently installed in the dash or console opening normally used by the **customer's auto** manufacturer for the installation of a radio; or

      (iv) Any device designed or used to detect speed measurement equipment such as radar or laser detectors and any jamming apparatus intended to elude or disrupt speed measurement equipment;

   f. **Loss** caused by:

      (i) War, including undeclared or civil war;

      (ii) Warlike action by a military force, including any action to hinder or defend against an actual or expected attack, by any government, sovereign, or other authority using military personnel or other agents;

      (iii) Insurrection, rebellion, revolution, usurped power, or any action taken by a governmental authority to hinder or defend against any of these; or

      (iv) Nuclear reaction or radioactive contamination.

      This exclusion applies regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**;

   g. **Loss** caused by strikes, lockouts, riots, civil commotion, or disorder; or

   h. **Loss** due to inherent vice, delay, loss of profit, loss of market, loss of market value, or loss of use.

2. On-Hook Towing Physical Damage Legal Liability Coverage does not apply to:

   a. **Loss** to tarpaulins, tools, repair equipment, or materials and equipment for loading or unloading, which are carried in or on the **insured auto**;

b. **Loss** to any **towed property** while it is in the custody of anyone other than an **insured**;

c. **Loss** to objects of art, including paintings and statuary;

d. **Loss** to jewelry; precious or semi-precious stones; gold, silver, platinum, or other precious metals or alloys;

e. **Loss** to live animals;

f. **Loss** to papers of any kind, including, but not limited to, money, securities, accounts, bills, currency, food stamps, notes, tickets, any other evidences of debt, passports, deeds, mechanical drawings, blueprints, manuscripts, or exhibits;

g. Debris removal, including extraction of pollutants from land or water; or removal, restoration, or replacement of polluted land or water;

h. **Loss** caused by order of any civil authority, including seizure, confiscation, destruction, or quarantine of property;

i. **Loss** to contraband or property in the course of illegal transportation or trade;

j. **Loss** to property caused by contamination or deterioration, including corrosion; decay; fungus; mildew; mold; rot; rust; any quality, fault, or weakness in the property that causes it to damage or destroy itself; or humidity, dampness, dryness, or changes in or extremes of temperature;

k. **Loss** caused by or resulting from release, discharge, seepage, migration, dispersal, or escape of **pollutants**;

l. **Loss** caused by or resulting from criminal, fraudulent, dishonest, or illegal acts committed alone or in collusion with another by an **insured**, anyone to whom **you** entrust the **towed property**, or anyone who has an interest in the property;

m. **Loss** caused by or resulting from voluntary parting with title to or possession of any property because of any fraudulent scheme, trick, or false pretense;

n. **Loss** caused by the explosion of explosives; or

o. **Loss** to computers and electronic goods, including, but not limited to, computer hardware and component parts, televisions, DVD players, stereo or other sound reproduction equipment, or any other electronic equipment, antennas, and other devices used exclusively to send or receive audio, visual, or data signals, or to store or play back recorded media.

**LIMITS OF LIABILITY**

1. **On-Hook Towing Physical Damage Legal Liability Coverage.**
   Regardless of the number, amount, or units of **towed property** or **insured autos**, **insureds**, premiums paid, claims made or lawsuits brought, the most **we** will pay for each **loss** is the aggregate amount of damages to all **towed property** while being **loaded in or on** or conveyed by one **insured auto**, not to exceed the limit of liability shown on the **declarations page** for this "On-Hook Legal Liability" coverage.

The most **we** will pay for **loss** to any **towed property** is the least of the following amounts:

a. The actual cash value of the damaged or stolen property at the time of **loss**;

b. The cost of repairing or replacing the damaged or stolen property with other of like kind and quality to the extent practicable; or

c. An agreed or appraised value for the property. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

2. **Garagekeepers Storage Location Physical Damage Legal Liability Coverage.**

Regardless of the number of **customer's autos** or **insured autos**, **insureds**, premiums paid, claims made, or lawsuits brought, the most **we** will pay for each **loss** at each location is the "Garagekeepers Legal Liability" coverage limit shown on the **declarations page** for that location.

The most **we** will pay for a **loss** to any one **customer's auto** or all **customer's auto** equipment is the least of the following amounts:

a. The actual cash value of the damaged or stolen property at the time of **loss**;

b. The cost of repairing or replacing the damaged or stolen property with other of like kind and quality to the extent practicable; or

c. An agreed or appraised value for the property. **We** may keep all or part of the property at the agreed or appraised value, but there shall be no abandonment to **us**.

If the repair or replacement results in better than like kind and quality, **we** will not pay for the amount of the betterment.

An adjustment for depreciation or physical condition will be made in determining actual cash value in the event of a total loss.

In the event of payment of actual cash value for a total loss, **we** are entitled to all salvage, or credit for salvage, resulting from such **loss**.

3. **Deductibles.**

For each **loss** that qualifies for coverage under the On-Hook Towing Physical Damage Legal Liability Coverage, the deductible shown on the **declarations page** will be applied.

For each **loss** that qualifies for coverage under the Garagekeepers Storage Location Physical Damage Legal Liability Coverage, the "Each auto" deductible shown on the **declarations page** will be applied separately to each **customer's auto** or **towed property** sustaining **loss** as a result of a single **loss** event. The maximum aggregate deductible applied for a single **loss** event will not exceed the "Each occurrence" deductible shown on the **declarations page**.

If **we** pay all or any part of a deductible in the settlement of any claim or law-suit, **you** must reimburse **us** for the deductible or the portion thereof that **we** paid.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form Z439 (02/19)

## NON-OWNED TRAILER PHYSICAL DAMAGE COVERAGE ENDORSEMENT

---

This endorsement modifies insurance provided by the Commercial Auto Policy. All terms and conditions of the policy apply unless modified by this endorsement.

**INSURING AGREEMENT**

Subject to the Limits of Liability, if **you** pay the premium for Non-Owned Trailer Physical Damage Coverage, **we** will pay damages for **property damage** for which **you** become legally responsible because of **loss** to a **trailer** not owned by **you**, and its equipment, while in **your** possession.

**We** will pay for a **loss** to the non-owned **trailer** and its equipment under the coverages described below, as reflected on **your declarations page**:
a.  Collision Coverage. For **loss** caused by:
    (i)   The **trailer's** collision with another object; or
    (ii)  The **trailer's** overturn.
b.  Comprehensive Coverage. For any **loss** except one caused by:
    (i)   The **trailer's** collision with another object; or
    (ii)  The **trailer's** overturn.

**We** will settle or defend, at **our** option, any claim or lawsuit for damages covered by this endorsement. **We** have no duty to settle or defend any lawsuit, or make any additional payments, after the Limit of Liability for this coverage has been exhausted by payment of judgments or settlements.

**ADDITIONAL PAYMENTS**

In addition to **our** Limit of Liability, **we** will pay for an **insured**:
a.  all expenses **we** incur in the settlement of any claim or defense of any lawsuit;
b.  interest accruing after entry of judgment on that part of the judgment that does not exceed **our** Limit of Liability. This payment does not apply if **we** have not been given notice of suit or the opportunity to defend an **insured**.

**Our** payment, offer in writing, or deposit in court of that part of the judgment which does not exceed **our** Limit of Liability ends **our** duty to pay interest that accrues after the date of **our** payment, written offer, or deposit;

c.  the premium on any appeal bond or attachment bond required in any lawsuit **we** defend. **We** have no duty to purchase a bond in a principal amount exceeding **our** Limit of Liability, and **we** have no duty to apply for or furnish these bonds;

d.  reasonable expenses, including loss of earnings up to $250 a day, incurred at **our** request;

e.  all reasonable expenses necessary to return a stolen **trailer** to **you**, unless **we** determine the **trailer** to be a total loss; and

f.  all reasonable expenses necessary to remove a **trailer** from the site of an **accident** or **loss** and transport it to a repair facility.

### ADDITIONAL DEFINITION USED IN THIS ENDORSEMENT

The following definition applies to this endorsement only:

"**Trailer**", when used in this endorsement, includes a shipping container.

### EXCLUSIONS

a.  **We** will not pay for **loss** caused by or resulting from any of the following. Such **loss** is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the **loss**.

   (i)   Nuclear Hazard.
      (1)  The explosion of any weapon employing atomic fission or fusion; or
      (2)  Nuclear reaction or radiation, or radioactive contamination, however caused.

   (ii)  War or Military Action.
      (1)  War, including undeclared or civil war;
      (2)  Warlike action by a military force, including action in hindering or defending against an actual or expected attack, by any government, sovereign, or other authority using military personnel or agents; or
      (3)  Insurrection, rebellion, revolution, usurped power, or action taken by a governmental authority in hindering or defending against any of these.

b.  **We** will not pay for loss of use.

c.  **We** will not pay for **loss** caused by, or resulting from, any of the following unless caused by another **loss** that is covered by this insurance;

   (i)   Wear and tear, freezing, mechanical or electrical breakdown, or structural failure caused by material fatigue, decomposition, or corrosion.

   (ii)  Blowouts, punctures, or other road damage to tires.

**LIMIT OF INSURANCE AND DEDUCTIBLE**

The most **we** will pay for **loss** to any one **trailer** is the least of the following amounts minus any applicable deductible shown on the **declarations page**:

a.  The actual cash value of the damaged or stolen property at the time of the **loss**;
b.  The amount necessary to replace the stolen or damaged property with other of like kind and quality;
c.  The amount necessary to repair the damaged property to its pre-loss condition; or
d.  The applicable Limit of Liability for the property as shown on the **declarations page**.

A single deductible will be applied to any **loss**. In the event there are different deductible amounts applicable to the **loss**, the higher deductible will be applied. In all events, the deductible will be applied against the limit of liability. If a **loss** involves another coverage added by endorsement to the policy, only one deductible will apply to the entire **loss** event. No deductible will apply to payments made under the Additional Payments section for expenses necessary to return a stolen **trailer** to **you**.

**OTHER INSURANCE**

The insurance provided for a **loss** to a non-owned **trailer** is primary.

If coverage under more than one policy applies on the same basis, **we** will pay only **our** proportionate share. **Our** proportionate share is the proportion that the Limit of Liability of this policy bears to the total of the limits of all the Coverage Forms and policies covering on the same basis.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THE POLICY REMAIN UNCHANGED.**

---

Form Z442 (02/19)

### ANY AUTOMOBILE LEGAL LIABILITY COVERAGE ENDORSEMENT

---

Except as specifically modified by this endorsement, all provisions of the Commercial Auto Policy apply.

**We** agree with **you** that the insurance provided under **your** Commercial Auto Policy is modified as follows:

**CHANGES TO PART I—LIABILITY TO OTHERS**

I.  The following changes are made to the Additional Definitions Used in This Part Only section:

A.   The definition of "**insured auto**" is modified to include:

1.   **Hired autos**;
2.   **Non-owned autos**; and
3.   Any other **autos** owned by **you**:
     a.   only while being used in the conduct of **your** business; and
     b.   that do not qualify as either **hired autos** or as **non-owned autos**.

However, this modification to the definition of **insured auto** does not apply to any **auto** acquired prior to the current policy period. But, for any type of **auto** that **you** acquire during the current policy period, this modification extends coverage to that **auto** during the remainder of the policy period.

B.   The following definitions are added:

1.   "**Hired auto**" means an **auto**:
     a.   **you** lease, hire, rent or borrow; or
     b.   **your employee** leases, hires or rents:
          i.    under a contract in that individual **employee's** name;
          ii.   at **your** direction and with your express permission; and
          iii.  only while being used in the conduct of **your** business.
     However, this does not include any **auto you** or an **employee** leases, hires, rents or borrows from any of **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or member of their households.

2.   "**Non-owned auto**" means an **auto**:
     a.   that **you** do not own;
     b.   that is not a **hired auto**; and
     c.   that is used in connection with **your** business.
     This includes **autos** owned by **your employees**, partners (if **you** are a partnership), members (if **you** are a limited liability company), or members of their households, but only while such **autos** are used in **your** business.

II.   The first paragraph under the Limit of Liability section is deleted and replaced by the following:

Regardless of the number of premiums paid, or the number of **insured autos** or **trailers**, or the number of policies issued by **us**, or the number of vehicles or **insureds** involved in an **accident**, or the number of claims or lawsuits arising out of an **accident**, **we** will pay no more than the limit of liability shown on the **declarations page** for the coverage provided by this endorsement.

**ALL OTHER TERMS, LIMITS, AND PROVISIONS OF THIS POLICY REMAIN UNCHANGED.**





1781 CO 0219

